JOHN T. STAGG, Executor, &c., Appellant, vs. JAMES JACKSON and MARY E., his wife, Respondents.

Where a testator devised and bequeathed all his real and personal estate to his executors, in trust, to sell the same whenever they should see fit; also with authority to lease the same, and directed the executors to divide the whole trust estate into nine equal parts, and pay over and convey one of said parts to each of his four children who were of age, and to hold the remaining five parts until his minor children should respectively become of age, and to pay over and convey to them their shares as they should become of age; *held*, that the executor could be compelled to account before the Surrogate, not only for the personal estate bequeathed to him, but also for the rents and profits of the real estate, and for the proceeds of such real estate as he had sold pursuant to the directions contained in the will.

It seems, upon the doctrine of equitable conversion, that under such a will the whole estate is to be considered as personal estate from the death of the testator, so that the rents and profits of the real estate received by the executor, and the proceeds of a sale thereof made by him, become legal assets in his hands, for which he is bound to account as personal estate.

Appeal from Chancery. Abraham Stagg died in 1835, having first made his last will and testament whereby he devised and bequeathed to his executors all his estate, real and personal, in trust, to sell such estate, or any part of it, whenever they should see fit, with authority also to lease the same for a life or lives or for years, and to invest the monies arising from the sale or the leasing, in bonds and mortgages, or in stocks, and to change the investment as often as they should see fit. The will also directed the trustees to divide the trust estate, and the proceeds and income thereof, into nine parts for his children, and to pay over and convey one part to each of his children, Anna Matilda, Mary Elizabeth, and John T.; to hold one other part as the share of Hannah Augusta upon certain specified trusts; and to hold the remaining five parts until the testator's five minor children should respectively become of age, and then to pay over and convey to them respectively their shares. During their minority the trustees were directed to pay out, from the income of the share of each child, such sum for the education and support of such

Stagg *v.* Jackson.

child, as they should think proper. In case either of the minors should die under age without leaving lawful issue, then the share of the one so dying was to be divided among the surviving children, and the children of such as should be dead, the child or children of a deceased child, taking the part which the parent if living would be entitled to.

The appellant, John T. Stagg, who was appointed by the will one of the executors and trustees, proved the will and took out letters testamentary. The respondents are one of the daughters of the testator and her husband.

The appellant was cited before the Surrogate of the city and county of New York, on the petition of the respondents, to render his account as executor, and such proceedings were had that in August, 1843, he filed his account, omitting therein all mention of the rents and profits of the testator's real estate, and the proceeds of the sale of such real estate which had come to his hands. The respondents took exceptions to he account, alleging, among other things, that certain real estate had been sold pursuant to the directions contained in the will, and insisting that the executor should charge himself with the proceeds of such sale, and with the rents and profits of the real estate received by him. The executor demurred, insisting, that the Surrogate's Court had not jurisdiction to compel an account of the funds arising out of the real estate, and that the settlement thereof could not be legally had in that Court. The Surrogate made an order overruling the demurrer of the executor, and directing him, among other things, to account for the rents and profits and the proceeds of the sale of the real estate. From this part of the order the executor appealed to the Chancellor, who affirmed the decision of the Surrogate, and further directed the executor to pay certain interest, by way of damages, for the delay and vexation caused by the appeal. The executor appeals to this Court.

*H. E. Davies,* for appellant.

*L. B. Woodruff,* for respondents.

*Points for Appellant :*

I. The Surrogate's Court, by its original constitution had no concern with or jurisdiction over real estate, and whatever jurisdiction it at present possesses over real property is derived exclusively from statutory enactments. (*Dakin* vs. *Hudson*, 6 *Cow.* 221; *Bloom* vs. *Burdick*, 1 *Hill* 139.)

II. If the Surrogate has any jurisdiction in this case, it is derived from the statute which enacts that "where, by any last will a sale of real estate shall be *ordered* to be made, either for the payment of debts or legacies, the Surrogate, in whose office the will shall be proved, shall have power to cite the executors in such will named to account for the proceeds of the sales, and to compel distributions thereof, and to make all necessary orders and decrees thereon, with the like power of enforcing them, as if the said proceeds had originally been personal property of the deceased in the hands of an administrator. (2 *R. S.* 110, § 57).

III. The will of Abraham Stagg devises the real estate to his executors to sell all or any part of the trust estate *whenever they shall see fit*—thus leaving the sale to rest entirely in the discretion of the executors. The case therefore does not come within the statute above cited, and the whole will shows a case of trust, in which the trustee is accountable only in a Court of Equity.

IV. The trustees may in their discretion lease the real estate, and in that case the rents and profits are to be paid over to certain persons. This is a clear devise and not a legacy, and if a devise the Surrogate has no jurisdiction over it.


*Points for Respondents :*

I. By the provisions of his will the entire property of the testator, real and personal, was blended in one common fund ; real estate to be converted into money, and the whole, together with the income thereof, to be applied to the payment of debts and legacies, and to be divided among his children.

Stagg *v.* Jackson.

1. This amounted to a conversion of the real estate into personalty *at the death of the testator,* upon the doctrine of equitable conversion.

2. This would be true, even if there had been no devise of the legal estate, but only a power to sell, &c. to pay debts and legacies, &c. (*Ram on Assets, p.* 139, (205,) *and cases cited; 2 Pow. on Dev. p.* 60, *and onward; Leigh & Dalzell on Eq. Conversion,* 5 *Law Library,* 1st *Series; Marsh* vs. *Wheeler,* 2 *Ewd. Ch. R.* 157 *; Lorrillard* vs. *Coster,* 6 *Paige,* 218 ; *Bunce* vs. *Vandergrift,* 8 *Paige,* 37).

II. In accordance with the above principles, which apply in equity to the whole estate *before* it is actually converted into money, the rents and profits, *when collected,* and the *proceeds* of sales actually made, are legal assets in the hands of the executor.

1. The powers conferred by the will appertain to John T. Stagg, in his representative character (i. e. as executor).

2. And upon the principle that whatever goes to the executor *as executor* is legal assets, both the income before a sale and the proceeds after the sale are deemed legal assets in his hands. (1 *Cruise,* 61 ; 1 *Atk.* 484 *;* 1 *P. Wms.* 430; *Hard.* 404. 133 *;* 1 *Vern.* 63 ; 2 *Vern.* 106, 248, 405 ; *Prec. Ch.* 117, 136 ; 2 *P. Wm.* 415, *Deg* vs. *Deg ;* 1 *Lev.* 224 *Dethicke* vs. *Caravan*).

III. The interest of the respondents (in right of Mrs. Jackson, the daughter of the testator) is that of legatee, entitled to an immediate division of the estate. And the trusts created for the protection of the minor children and grandchildren of the testator do not impair the respondents' right to treat the moneys received by the executor as legal assets, received for their use.

IV. Real estate, when *converted* into money for the payment of debts and legacies and distribution, is not only legal and personal assets in the hands of the executor, but is to be accounted for before the Surrogate.

27

1. The statute is explicit in regard to proceeds of sales.

2. There is no foundation for any distinction between the rents *collected* before the sale and the money received on the sale; both are the result of the conversion contemplated by the will.

3. The accounting must therefore be *as executor.* (2 *R. S.* 109–110; § 55,57, 61; *id.* 92, § 52, 53; *id.* 90, § 45, 48; *id.* § 18, 19; *Bogert* vs. *Hertell,* 4 *Hill,* p. 492; *Toller on Exrs. p.* 413, and onward; *Sess. Laws of* 1837, *Ch.* 460, § 75, *p.* 537).

V. There is nothing meritorious in the objections by the executor to the order appealed from. The nature of these objections—the previous decision of the Court of Chancery upon the appellant's own application in regard to this estate, acquiesced in by him, and the lapse of *twelve* years, during which the executor has held this estate in his own hands, all show that this appeal is taken for the mere purpose of vexation and delay, while the executor retains the money for his private use and benefit. (2 *R. S.* 618, §35, *Boyd* vs. *Brisban,* 11 *Wend.* 529).

JEWETT, CH. J. The principal question made on the argument was, whether the Surrogate's Court had jurisdiction to compel an account and payment against the executor of the proceeds of the real estate sold by him under the power contained in the will of his testator and of the rents and profits of such real estate received by him before such sale under it.

In behalf of the appellant it was insisted, that that Court did not possess any jurisdiction over the subject, unless it was derived from 2 *R. S.* 110, § 57, which provides that " where by any last will, a sale of real estate shall be ordered to be made, either for the payment of debts or legacies, the Surrogate in whose office such will was proved, shall have power to cite the executors in such will named, to account for the proceeds of the sales, and to compel distribution thereof; and to make all necessary orders and decrees thereon, with the like power of enforcing them, as if the said proceeds had been

originally personal property of the deceased in the hands of an administrator."

I am of opinion that, independent of that statute, and the provisions of § 75 of the statute of 1837, chap. 460, the Surrogate's Court had the jurisdiction claimed by it. By the provisions of 2 *R. S.* 92, § 52, the Surrogate has jurisdiction, upon application from some person having a demand against the *personal* estate of the deceased, either as creditor, *legatee* or next of kin, &c.; or without such application, to compel the executor or administrator to render an account of his proceedings; and by the provision of 2 'R. *S. p.* 90, §§ 45, 48, *p.* 116, §§ 18, 19, he has jurisdiction to decree payment of debts, *legacies*, and distributive shares against the executor or administrator, in the following cases :

1. Upon the application of a creditor, the payment, &c., may be decreed at any time after six months shall have elapsed from the granting of the letters testamentary or of administration.

. 2. Upon the application of a legatee, &c., payment of such legacy, &c., may be decreed and enforced at any time after one year shall have elapsed from the granting such letters.

The testator by his will devised and bequeathed all his estate, real and personal, to his executors, their heirs, executors, administrators and assigns, as joint tenants and not as tenants in common, forever,in trust to sell the same, and until such sale, to receive the rents, profits and income thereof, for the purposes of his will, and upon the following trust: First, to invest the proceeds of the real and personal estate, and to pay out of the same $50 annually, for the maintenance and education of his daughter Helena and his son Junius Theodore, respectively, until they should attain the age of fifteen years, over and above their respective distributive shares of the estate and the income thereof. Secondly, to divide the trust fund and the income thereof, subject to those charges thereon, into nine equal parts, and to pay over and convey one part thereof to his daughter Anna Matilda and her heirs, one equal part to his daughter Mary Elizabeth and her heirs,

and one equal part to John T. the appellant, and his heirs; to hold one other part thereof in trust for his daughter Hannah Augusta Gautier, and to hold the remaining five parts thereof in equal shares for his other five children, Abraham, Benjamin Charles, Frederick, Helena, and Junius Theodore, who were then minors, as in the next clause of his will mentioned. Thirdly, to hold the shares of such minor children respectively, until they should arrive at full age, and then to pay over the same to them or their heirs or assigns; and during the minority of each, to pay so much of the income of his or her share, for his or her support and education, as the executors should think proper; and if either of said minor children should die under age and without leaving lawful issue, the will directed that his or her share should go to, and be divided among the surviving children of the testator and the issue of such of his children as should have died leaving children.

By these provisions it is manifest, that the testator intended that his whole estate, real and personal, together with the rents, profits, and income, intermediate the sale, should become united in one common money fund for the sole purpose of division and distribution among the objects of his bounty; and upon the principle of equitable conversion, the real estate was converted, by the devise and direction to sell, into personalty, from the death of the testator; the money arising from the sale thereof became legal assets in the hands of the executor when received by him, and for which, as such executor, he was bound to account as personal estate. The intent and direction of the testator to sell the land was absolute, or " out and out" for all purposes. The discretion of the executor in respect to the sale related merely to the time when, &c. (*Bcgert* vs. *Hertell*, 4 *Hill* 492; · *Ram. on assets* 206; *Leigh* vs. *Dalsell, on Con. of Prop. chap.* 1, 2, 3; *Smith* vs. *Claxton*, 4 *Mad.* 484; *Marsh* vs. *Wheeler*, 2 *Eden. Ch. R.* 157; *Doughty* vs. *Bull*, 2 *P. Wms.* 320; *Deg* vs. *Deg*, *Ib.* 415, 1 *Jarmin on Wills, chap.* 19.)

Mary Elizabeth, one of the daughters of the testator, who

is the wife of Jackson, is a legatee of one ninth of the whole estate, real and personal, including the rents, profits, and income thereof received by the appellant, subject to the payment of the debts and funeral charges of the testator and expenses of the administration, and the directions contained in the will. I agree with the Chancellor that the Surrogate was right in the sentence and decree which he made directing the appellant to account for the rents and profits and proceeds of the sales of the real estate as well as the personal effects of the testator.

2 *R. S.* 618, § 35, authorises the Court of Chancery, upon affirming any decree, upon appeal from a Surrogate's Court, to that Court, in its discretion to award damages to the respondent for the delay and vexation caused by such appeal. That discretion was exercised by the Court of Chancery on the affirmance of the decree of the Surrogate in this case, and upon correct principles as I think. I am therefore of opinion that the decree of the Court of Chancery should be affirmed, and, under the circumstances, with costs to be paid by the appellant personally.

Ordered accordingly.