Hattie R. Lent et al., Respondents, *v.* Hayden H. Howard et al., Executors, etc., Appellants.

Where a will contains no specific devise of the testator's real estate, but a bare power of sale is given to the executors and the title descends to the heirs of the testator, subject to the execution of the power, the right of possession follows the title and the heirs are entitled at law to the intermediate rents and profits.

If, however, the power of sale operates as an immediate conversion of the land into personalty, accompanied with a gift of the proceeds, in equity the intermediate rents and profits go with and are deemed to be a part of the converted fund ; the heir may be compelled to account therefor to the executor, and the latter to the beneficiary, for so much thereof as is received by him, as well as for the proceeds of sales.

Where the general scheme of the will requires a conversion, the power of sale, although not in terms imperative, operates as a conversion, and this will be deemed to be immediate, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time of sale.

The will of L., after giving various legacies, contained a clause authorizing his executors to sell all of his real estate, except his homestead farm, at such times and prices as to them should seem best for the interest of the estate, and after carrying out the foregoing provisions to invest the balance of the estate in their hands in bonds and mortgages or in State

stocks.   One-half of such balance the testator gave to his daughter L., to be paid to her when she arrived of age ; in case of her death, before the testator's wife, without lawful issue, the same to be paid to the wife. The other half he gave to his wife to be paid to her ten years after his decease. In case of her death before the daughter, said one-half to be paid to the daughter.   The homestead farm was devised to the wife for life. The executors received the rents and profits of the real estate. In an action for an accounting, *held,* that by said clause there was a conversion of the testator's real estate, with the exception specified, into personalty, as of the time of his death, and a gift of the converted fund together with the intermediate income to the wife and daughter with cross-remainders; and that the rents and profits received by the executors, and the proceeds of sales were properly brought into the accounting.

The testator left five farms, including the homestead farm, and several houses and lots in the village of L. R.   B., one of the executors, who lived several miles from L.-R., at the request of the other executors, including the widow, removed to that village, took charge of all the real estate and continued in charge thereof, except two farms sold, working upon, managing and improving it for nearly fifteen years.   The gross rents and profits were entered in the executors' accounts, and also the disbursements.   The will gave to the executors $1,000 in addition to their commissions.   The referee found that the services of B. exceeded in value his commissions and the sum so given. *Held,* that B. was entitled to be allowed out of said gross rents and profits, in the nature of a charge thereon, a suitable compensation for his services ; that the rule prohibiting an executor from charging more than the statutory commissions for his personal services in the discharge of the duties of his trust did not apply, as the services so rendered were no part of his executorial duties.

*It seems* that it is the duty of trustees holding funds for investment to use due diligence to keep them invested ; if they have retained them uninvested beyond a reasonable time, six months being usually allowed, they are *prima facie* liable for interest, and the burden is upon them, upon an accounting, to explain or justify the delay.

B. received a sum of money on the exchange of a house and lot for a farm. *Held,* that in the absence of evidence that the exchange was made with the knowledge of his co-executor, H., or that the money ever came to the hands or under the control of the latter, he was not chargeable with the sum so received.

The executors were directed by the will to set apart the sum of $10,000 on bond and mortgage, the income to be expended for the maintenance of the daughter during life ; it also gave to the widow an annuity of $700, the executors being directed to invest sufficient to produce it.   The executors had not, at the time of the trial, made any investments, and had, before that time, transferred to the plaintiffs, who were the widow and daughter, the latter then being of age, and who were the only persons

interested, all the real and personal estate of the testator in their hands. Plaintiffs asked that the trusts be extinguished. *Held*, that the court had no authority to permit the alienation or abrogation of such a trust.

(Argued April 5, 1882; decided May 30, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1881, which affirmed a judgment entered upon the report of a referee.

This action was brought by plaintiffs, the widow and only child of John H. Lent, late of Le Roy, Genesee county, who died June 20, 1863, against defendants as executors and trustees under the will of said deceased, for an accounting, and for an extinguishment of the unexecuted trusts under the will and transfer to plaintiffs of the residue of the estate.

The material portions of the will are as follows:

"*Item third.* * * * And I also give, devise, and bequeath unto my said wife, Hattie R. Lent, the use, occupation and enjoyment of my homestead farm and premises, containing about two hundred acres of land situate on the north side of Main street, in Le Roy, for and during her natural life, free of rent, and at the decease of my said wife, I give, bequeath and devise my said homestead farm to my said daughter, Lucy M., her heirs and assigns forever, in fee; and in case my said daughter, Lucy M., should die before my said wife, without leaving lawful issue, then I give and devise my said homestead farm to my said wife absolutely in fee, her heirs and assigns forever."

"*Item fifth.* I hereby will and direct my said executors to set apart and invest the further sum of ten thousand dollars ($10,000) out of my personal property or estate, on bond and mortgage on unincumbered real estate, worth double that amount on semi-annual interest, the interest on such sum, or so much thereof as may be necessary, I direct to be expended annually by my said executors for the support, maintenance and education of my said daughter, Lucy M., during her minority, and in case the interest or income of said sum shall be

more than sufficient for the purpose above expressed, then I direct that the surplus thereof shall be added to and become part of the principal sum so to be invested as aforesaid ; and I further direct that on and after my said daughter, Lucy M., shall attain the age of twenty-one years, the said sum shall continue to be invested by my said executors, or the survivor of them, as above directed, and the interest thereon to be paid to her semi-annually during her natural life ; and in case my said daughter shall die before my said wife, without leaving lawful issue, then I direct that the said principal sum above set apart for her use and benefit shall be paid to my said wife, to have, hold and use the same, and to her heirs and assigns forever.

"*Item sixth.* I give and bequeath to my said wife, Hattie R., an annuity of seven hundred dollars, to be paid to her semi-annually during her natural life, and direct my said executors to set apart and invest out of my personal estate a sum sufficient to produce such annuity, to be invested on bond and mortgage on unincumbered real estate at least double the amount, and if my said daughter survives my said wife, then my said daughter, Lucy M., is to inherit this annuity absolutely, and in that case I give and bequeath such annuity unto my said daughter, to be paid and invested as above directed."

"*Item eighth.* I give to my executors, each, the sum of one thousand dollars, over and above fees for executing this my will.

"*Item ninth.* I hereby authorize and empower my said executors, or the survivor of them, to sell all of my real estate and convert the same into money (except my said homestead farm), at such time or times, and at such prices as shall to them seem best for the interest of my estate, and to carry out any and all contracts executed by me ; and I further direct my said executors, after paying debts and carrying out the provisions of my will as above directed, to invest all the balance and remainder of my estate remaining in their hands on bond and mortgage on unincumbered real estate, worth double the amount, on semi-annual interest, or in State stocks of New York, or both, as to them shall seem best for the interest of my estate.

" The one equal half of such balance or remainder I give and bequeath to my said daughter, Lucy M., to be paid to her on her attaining twenty-one years of age, and to her heirs and assigns forever, except in case she shall die before my said wife without leaving lawful issue, then such balance or remainder to be paid to my said wife absolutely. The other one-half of such balance or remainder I give and bequeath to my said wife, Hattie, to be paid to her at the expiration of ten years after my decease, her heirs and assigns. In case she dies before my said daughter, then the said one-half last above mentioned to be paid to my said daughter absolutely.

" The above provisions and bequests to my said wife to be in lieu of her dower out of my estate.

" Hereby revoking all former wills or codicils by me made.

" And I hereby constitute and appoint my wife, Hattie R. Lent, E. Nelson Bailey and Hayden U. Howard, executrix and executors and trustees of this my last will and testament.

" And I do appoint my said wife guardian of my said daughter, and in case of her decease before the majority of my said daughter, then I appoint Hayden U. Howard her guardian."

At his death the testator was the owner of a large personal estate and of real estate consisting of five improved farms, houses and other tenements in Le Roy, and some wild land in Michigan.

Immediately after the death of the testator and before the will was proved, the two executors, Howard and Bailey, arranged between themselves as to the management of the estate. Mr. Bailey was to take the management and direct control of the real estate, and Mr. Howard was to take the immediate control and management of the moneys, credits and securities; each, however, subsequently acted and participated with the other in the affairs of each department of the estate. This arrangement was communicated to Mrs. Lent, and she acquiesced in it. When the will had been proved, Mr. Howard took possession of the entire personal estate, except the farm and stock and chattels which were left in the custody and control of Mr. Bailey, and the property specifically bequeathed to

Mrs. Lent which was delivered to her; and Mr. Bailey assumed the control and management of the real estate, including the homestead farm, and continued in charge working the farms and receiving the rents and profits until March, 1878. An inventory was made but never filed; no funds were set apart or invested as required by items five and six of the will. Two of the farms were sold; upon the accountings the executors were charged with the proceeds and for the rents and profits of the real estate.

The further material facts appear in the opinion.

*William F. Cogswell* for appellants. The defendants, as executors of the will of Mr. Lent, had not, and it was legally impossible that they should have, any interest in or control of the real estate which he left, except merely the power of sale. Until the time such power was exercised, the real estate descended to the heir at law of Mr. Lent, subject to the execution of the power. (*Downing* v. *Marshall*, 22 N. Y. 366, 380; *White* v. *Howard*, 46 id. 144; *Hetzel* v. *Barber*, 69 id. 1; *Crittenden* v. *Fairchild*, 41 id. 289.) The referee erred in charging the defendants with interest upon money in their hands at the end of each year. (*Hartwell* v. *Root*, 19 Johns. 345; Perry on Trusts, § 890; *Taylor* v. *Benham*, 8 How. [U. S.] 233, 275.) He also erred in charging each executor not only for all the moneys received by himself, but also for all the moneys received by his co-executor. (Redfield on Law and Practice of Surrogate's Court [2d ed.], 507, notes 1 and 2.) Mrs. Lent, as testamentary guardian of her daughter had power to employ a proper person to take charge of the real estate. (2 R. S. 153, § 20.) The services rendered by Bailey were entirely outside of his duty as executor, and he had a right to compensation therefor. (*Lansing* v. *Lansing*, 45 Barb. 182; *Morgan* v. *Morgan*, 39 id. 20.)

*George Bowen* for appellants. In general when a person is bound to do an act the omission of which would be a culpable neglect of duty the performance of it will be presumed. (*Hart-*

*well* v. *Root*, 19 Johns. 345; Perry on Trusts [last ed.], § 890.) The executors can only be made responsible for a sum greater than they have received in cases of very supine negligence or willful default. (*Taylor* v. *Benham*, 5 How. [U. S.] 233, 275.) A breach of trust is never presumed. (Perry on Trusts, §§ 353, 511, 580, citing 4 Johns. Ch. 45.) The trusts created by the will are not extinguished, and the trust property has not vested absolutely in the plaintiffs. (Perry on Trusts [last ed.], §§ 853, 849 ; *Wilson* v. *Troup*, 2 Cow. 195 ; *Beeson* v. *Beeson*, 9 Barr. 279.) The ninth clause of the will gave a mere naked power of sale. (*Hetzel* v. *Barber*, 69 N. Y. 1; reversing *S. C.*, 6 Hun, 5, 34; *Reed* v. *Underhill*, 12 Barb. 113 ; *Crittenden* v. *Fairchild*, 41 N. Y. 289.) A donee of a power to sell takes no estate in the land. (*White* v. *Howard*, 46 N. Y. 144; affirming 52 Barb. 294 ; *White* v. *Fox*, 63 Barb. 157 ; affirmed, 52 N. Y. 530–537 ; *Newell* v. *Nichols*, 75 id. 78–86; *Gourley* v. *Campbell*, 66 id. 169 ; reversing *S. C.*, 6 Hun, 218, and overruling 1 id. 38.) The party entitled to the land may elect to take it. (*Prentice* v. *Janssen*, 79 N. Y. 478.) A naked power to sell real estate may be exercised or not by an executor, and is discretionary. (*Taylor* v. *Benham*, 5 How. 233.) A testamentary guardian has a vested interest in the estate of his ward. He may bring actions relative thereto, make avowry in his own name, and make leases during the minority of the infant. (*People* v. *Byron*, 3 Johns. Cas. 53–56 ; R. S. [5th ed.] 243, §§ 1, 2 ; *Haggarty* v. *Haggarty*, 9 Hun, 175.) Until the farms could be sold it was the duty of the executors and trustees (and of Mrs. Lent with the rest) to have them worked, and to keep them in repair, and in a saleable condition. (*Lansing* v. *Lansing*, 45 Barb. 182 ; *Collier* v. *Munn*, 41 N. Y. 143 ; *In re Schell*, 53 id. 263, 266.) The services of Bailey are an equitable set-off on this accounting. (*Morton* v. *Ludlow*, 5 Paige, 519 ; *Davis* v. *Stover*, 58 N. Y. 473; *Smith* v. *Fox*, 48 id. 674; *Smith* v. *Felton*, 43 id. 419.) Technical objections, which would be valid at law, will not avail to defeat an equitable set-off. (43 N. Y. 419; *Lindsey* v. *Jackson*, 2 Paige,      ; *Schermerhorn* v. *Anderson*, 2 Barb.

584; *Pignolet* v. *Geer*, 1 Robt. 626; *Briggs* v. *Briggs*, 20 Barb. 477; *Newell* v. *Salmon*, 22 id. 647; *Dobson* v. *Pearce*, 12 N. Y. 156–165.) If the creditor by means of a lien or other lawful means can pay himself without resorting to an action against the person of the debtor he may lawfully do so. (*Courtenay* v. *Williams*, 25 Eng. Ch. [3 Hare] 539, 551, 552; *Spears* v. *Hartley*, 3 Esp. 81.)

*M. H. Peck* for respondents. Defendants' answer did not set forth a counter-claim requiring a reply, and was not therefore admitted for want of a reply. (*Cook* v. *Jenkins*, 79 N. Y. 575; *Bates* v. *Rosekrans*, 37 id. 409; *Eq. Ins. Co.* v. *Cuyler*, 75 id. 511; *Von Sachs* v. *Kretz*, 72 id. 548.) Upon the facts found defendants were properly charged with interest upon the moneys remaining from year to year uninvested in their hands. (*King* v. *Talbott*, 40 N. Y. 76.)

ANDREWS, Ch. J. We are of opinion, that the executors were properly held to account for the rents and profits of the real estate received by them, and for the proceeds of sales of real estate made under the power conferred by the will.

It is undoubtedly true, that the executors did not take a legal estate in the lands of the testator. They were vested simply with a power of sale, and there being no specific devise of the lands, the title descended to the heirs of the testator, subject to the execution of the power (1 R. S. 722, § 56), and the right of possession followed the legal title. But while at law the rents and profits of land are incident to the possessory right and belong to the holder of the legal title, they may in equity belong to another. Where by a will a bare power of sale is given to executors, and the lands meanwhile descend to the heir, the latter is at law entitled to the intermediate rents and profits, but if the power of sale operates as an immediate conversion of the land into personalty, accompanied with a gift of the proceeds, then in equity the intermediate rents and profits, go with, and are deemed to be a part of the converted fund, and the heir may be compelled to account therefor to the executor. (*Stagg* v. *Jackson*, 1 N. Y. 206; *Moncrief* v. *Ross*, 50

id. 431; *Lancaster* v. *Thornton*, 2 Burr. 1028; *Yates* v. *Compton*, 2 P. Wms. 308; Ram on Assets, 83.) In *Moncrief* v. *Ross* the action was by the heir against the executor to compel the latter to account for intermediate rents of real estate descended to the heir, subject to an immediate and imperative power of sale in the executor, and the relief was denied on the ground that the rents were assets in the hands of the executor. It appeared in that case that the executor had received the rents of the real estate, but under what circumstances the case does not disclose. The remedy of an executor to recover the intermediate rents and profits of land descended to the heir subject to an immediate and imperative power of sale and a gift of the proceeds to other persons, would seem to be in equity only. The legal possession of the land is in the heir, and not in the executor, and the latter cannot at law, recover possession, or exclude the heir therefrom. The heir may be compelled to account, and other equitable remedies may doubtless be resorted to by the executor to prevent spoliation, in the nature of waste, to the injury of the legatees of the proceeds.

We think there was by the ninth section of the will in question, a conversion of the testator's real estate (except the homestead farm,) into personalty as of the time of his death, and a gift of the converted fund, together with the intermediate income, to the testator's wife and daughter, with cross remainders. It is true that the power of sale is not in terms imperative. The words are those conferring authority, and not words of command or absolute direction. But it is clear that a conversion was necessary to accomplish the purpose and intention of the testator in the disposition of the proceeds, and when the general scheme of the will requires a conversion, the power of sale operates as a conversion, although not in terms imperative. (*Dodge* v. *Pond*, 23 N. Y. 69.) The conversion also will be deemed to be immediate, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time of sale. (*Stagg* v. *Jackson, supra ; Robinson* v. *Robinson*, 19 Beav. 494.) We are therefore of opinion, that the rents and profits of the real estate received by the executors,

and the proceeds of sales, were properly brought into the accounting.

But a serious question arises, which is not free from difficulty, in respect to the claim of the defendant, Bailey, to an allowance for services in taking charge of, and managing the farms and real estate of the testator, after his death. The testator left five farms (including his homestead farm), all but one of which, were in the county of Genesee, and; also several houses and lots in the village of Le Roy, in that county. The defendant Bailey, was the brother of the testator's wife, and the defendant Howard, her brother-in-law. Howard was a banker living at Batavia; and Bailey was a farmer and miller, living several miles from Le Roy. After the testator's death, he changed his residence, removed to Le Roy, and took charge of all the real estate belonging to the testator at the time of his death, including the homestead farm, which was devised to the testator's wife for life. He continued in charge of the real estate (except two farms, sold,) working upon, managing and improving it, and receiving the rents and income until March, 1878, a period of nearly fifteen years, and the services performed by him, as the referee found, exceeded in value his commissions as executor, and the legacy of one thousand dollars given him by the will. The defendant Bailey, took charge of the real estate at the request of the other executors, including Mrs. Lent, and the homestead farm was managed by him in the same way as the other real estate. It is clear that the executors supposed that the management and control of the real estate devolved upon them as such. The gross rents and income were entered in the executor's accounts, as were also the disbursements for taxes, repairs, labor, seed, etc. The general rule is well settled, that the commissions allowed by statute to executors measure the compensation to which they are entitled for their services in the execution of the trust. An executor, or trustee, empowered to manage an estate, may employ a clerk or agent, and charge the estate with the expense, when from the peculiar nature and situation of the property, the services of a clerk or agent are necessary, and

he will be allowed expenses of keeping up the estate, and for taxes, repairs, etc.  But executors cannot employ one of their number as clerk and allow him a salary, nor will an executor be allowed compensation for his own services as attorney in the affairs of the estate.  (*Vanderheyden* v. *Vanderheyden*, 2 Paige, 287; *Clinch* v. *Eckford*, 8 id. 412 ; *Collier* v. *Munn*, 41 N. Y. 143; Perry on Trusts, § 913.)  The principle is, that for the personal services of an executor or trustee in the discharge of executorial duties, or those which pertain to his trust, the commissions allowed by law are deemed to be a full equivalent.  We are not disposed to impair the force of this salutary rule, although in some cases the statutory compensation may be quite inadequate.  But we think the rule does not fully or justly apply to the claim of the defendant Bailey, to be allowed out of the gross rents and profits of the real estate a suitable compensation for his services in the nature of a charge thereon, for his labor expended in producing them.  It was no part of his executorial duty to spend his time and labor in conducting the business of carrying on the farms.  Clearly, there can be no ground for claiming that he owed any duty whatever in respect to the homestead farm; but as has been said, this farm was managed in the same way as the rest.  The executors were not entitled to the possession of the testator's real estate.  The control and management was apparently surrendered to Bailey by the consent of all the parties in interest.  In accounting, the executors should be charged with the net income and profits, and we think a reasonable compensation to Bailey for his services and labor is a proper element to be considered in ascertaining them. This conclusion renders a reversal of the judgment necessary.

There is another important question in respect to the interest charged against the executors on uninvested balances in their hands from time to time.  The referee charged them with interest on such balances, at the rate of six per cent, per annum, amounting in the aggregate to about $20,000.  The account rendered seems to show that the estate earned an average of more than five and one-half per cent, per year, from the

death of the testator, up to the time of the accounting. There is no affirmative evidence that the executors negligently kept the fund uninvested, and there is some evidence that they made efforts to keep it at interest. They were directed by the will to invest the funds of the estate, on bond and mortgage, or in State stocks, of the State of New York. It is the duty of trustees, guardians, etc., holding funds for investment, to use due diligence to keep them invested. (*DePeyster* v. *Clarkson*, 2 Wend. 77.) Some time usually elapses before investments can be made, and in charging a trustee with interest, six months from the time the money was received, is usually allowed as a reasonable time. (*Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508.) After a reasonable time, trustees are *prima facie* liable for interest, and if they have retained money uninvested beyond such reasonable time, the burden is on them, on an accounting, to explain or justify it. If the executors in this case negligently omitted to make investments, or kept the fund idle for personal reasons, or if on the accounting, they render no explanation of the delay, interest may properly be charged against them, computed upon the principle adopted by the referee. (*King* v. *Talbot*, 40 N. Y. 76.) The facts bearing upon the liability of the defendants, either jointly or severally, for interest on uninvested funds, may upon a new trial be more fully developed, and the further consideration of the question at this time is unnecessary.

There does not seem to be any ground for charging the defendant Howard with the sum of $786.60, received by the defendant Bailey on the exchange of the house and lot for the Kellogg farm. We find no evidence that the defendant Howard, had any knowledge of the transaction, or that the money ever came to his hands or under his control. There are some other items charged in the account to which objection is taken. The errors in respect to them, if they exist, are obvious, and can be corrected on a rehearing.

The executors excepted to that part of the judgment, which adjudges the determination and extinguishment of the unexecuted trusts, directed by the fifth and sixth articles of the will.

By the fifth article, the executors are directed to set apart and invest $10,000, on bond and mortgage, for the maintenance of the testator's daughter during her minority, and to pay the income to her thereafter, during her life, and in case of her death before the death of his wife, to pay the principal sum to her. By the sixth article, the testator gives to his wife an annuity of $700, and directs his executors to invest on bond and mortgage, a sum sufficient to produce the annuity, and in case his daughter survives his wife, to pay over the same to her. The executors have never made any investment on the trusts directed by these sections of the will, and prior to the trial of this action, they transferred to the plaintiffs, all the real and personal estate of the testator in their hands. The testator's daughter, became of age in 1878, and the plaintiffs, who are the only persons interested, unite in asking that the trusts be extinguished. There are authorities which hold that it is in the power of a court of equity to decree the determination of unexecuted trusts of this nature, where the parties beneficially interested, unite in the application (*Smith* v. *Harrington*, 4 Allen, 566 ; Perry on Trusts, § 920, and cases cited.) Whatever view may be taken of the general jurisdiction of courts of equity, in the absence of any statutory or legislative policy, to abrogate continuing trusts, created for the purpose of providing a sure support for the widow or children of a testator, or other beneficiary, the indestructibility of such trusts here, by judicial decree, results, we think, from the inalienable character impressed upon them by statute. The beneficiaries, of trusts for the receipt of the rents and profits of land, are prohibited from assigning or disposing of their interest (1 R. S. 729, § 63), and this provision is held to apply, by force of other sections of the statute, to the interest of beneficiaries in similar trusts of personalty. (*Graff* v. *Bonnett*, 31 N. Y. 9.) This legislative policy, cannot we think be defeated by the action of the court permitting such alienation, or abrogating the trust. (See *Douglas* v. *Cruger*, 80 N. Y. 15.) The provision in the judgment in this case, abrogating the trust in question, was therefore unauthorized. Whether any practical difficulty now exists in the way of giving

effect to the will of the testator, need not now be considered. It is sufficient to say that the principle that the courts may destroy trusts for support and maintenance, is sanctioned by the judgment in this case, and the judgment is also for this reason erroneous.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except TRACY, J., absent.

Judgment reversed.