PETITION OF NEWTON ADAMS, *Admr.*, *et al.*, FOR AN OPINION.

JANUARY 11, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Wills. Equitable Conversion.*

Testamentary devise as follows:—"I give, devise and bequeath to my executor, all my real and personal estate of every kind in trust to receive the rents and profits of my real estate until it shall be sold and to sell my real and personal estate and convert the same into money as soon as may conveniently be done after my decease, and on such terms as he may deem proper and to dispose of said rents and profits and of the proceeds of the sale of my real and personal estate in the manner hereinafter directed;" *i. e.* "to divide all the rest, residue and remainder of my real and personal estate or the proceeds thereof into three equal shares and to pay over one of such shares to A. if he shall have attained the age of 25 years at the time of my decease" and with other similar provisions for the payment of the other two shares to B. and C. if they had attained such age at that time; with directions in case any of the beneficiaries should be living and under the age of 25 years at death of testatrix, that the executor should hold such share in trust until the attaining of that age.

"I appoint my nephew X. the executor of and trustee under this will." X. having deceased, Y. was appointed administrator with the will annexed and substituted trustee:—

On special case stated for construction of will:—

*Held*, that:—the express intention of testatrix was that all the residuary real estate should be converted by executor into personal property, and that the beneficiaries should receive personal and not real estate.

(2) *Equitable Conversion.*

An absolute and not discretionary direction to an executor to sell real estate and distribute the proceeds of the sale as money or invest them in personal property works an out and out conversion of the real estate into personalty, so that the interests of the beneficiaries must be treated for all purposes in equity as personal and not real property from the date of testator's death.

(3) *Discretion in Executor. Equitable Conversion.*

When a testator directs his executor to sell his real estate, a discretion given the executor as to the time, manner, or terms of sale will not prevent an equitable conversion from taking place.

(4) *Same.*

*Held*, further, that, in this case, the duty of the executor to sell was absolute, and not discretionary, since the power given him was in trust and its exercise was compulsory.

(5) *Wills.   Construction.*

*Held,* further, that the legal title to the real estate in question was given to the executor, and the residuary legatees got no right, title, or interest in it, legal or equitable, which could be conveyed by them or upon which attachment could be levied.

(6)   *Powers of Sale Given Executor Vest in Administrator.*

The powers of sale conferred upon the executor by the will vested under Gen-Laws, 1909, cap. 312, § 26, in the administrator with the will annexed upon his appointment and qualification as such.

(7)   *Wills.   Executors.   Trusts.*

*Held,* further, that, while it might be necessary for the executor to hold some of the proceeds of the sale in trust for a time, this did not alter the nature of the power of sale, and the administrator must exercise the power in his capacity as administrator having no active duties as trustee until he had set aside the share of C., who was under 25 years of age, which he should hold in trust for her.

(8)   *Wills.   Sale by Executor Under Power.*

*Held,* further, that the administrator might sell and convey the property so as to convey all the right, title, and interest of testatrix free and clear of any incumbrances attempted to be placed upon it since the decease of testatrix, either by way of attachment in suits against the beneficiaries or by way of deed from one of such beneficiaries.

PARKHURST, J.   This is an original proceeding in this court, under the provisions of Gen. Laws, 1909, chapter 289, § 20, wherein parties having adversary interests in the construction of a will concur in stating certain questions in the form of a special case, by way of a petition for the construction of the will of Sophia E. Blatchford in so far as it concerns the title to certain real property in the city of Newport, devised in and by said will in clause sixteen thereof, which is as follows:   "I give, devise and bequeath to my executor all my real and personal estate of every kind whatsoever and wheresoever situated and whether acquired before or after the execution of this will, with the exception of such personal property as is hereinbefore specifically bequeathed by clauses second to fourteenth inclusive of this will, in trust to receive the rents and profits of my real estate until it shall be sold, and to sell my real and personal estate and convert the same into money as soon as may conveniently be done after my decease, and on such terms as he may deem proper, and to dispose of said rents and profits and

of the proceeds of the sale of my real and personal estate in the manner hereinafter directed, with power to my executor to lease or mortgage any of my real estate, should he deem it necessary to do so for the purpose of carrying out the provisions of this my will; and with reference to any mortgage made on any of my real property in Newport, Rhode Island, it is my will that any and every mortgage made hereunder on said real property may contain such clause for sale and insurance, and such other clauses as are customary in mortgages taken by the savings banks of Newport, Rhode Island."

The seventeenth clause of the will directs the "executor to divide all the rest, residue and remainder of my real and personal estate, or the proceeds thereof, into three equal shares, and to pay over one of such shares to Francis Hunter Potter, if he shall have attained the age of twenty-five years at the time of my decease;" and by the eighteenth clause the executor is directed to pay over another of the shares to Philip Barton Key Potter, if he shall have attained the age of twenty-five years at that time; and by the nineteenth clause the executor is directed to pay over another of the shares to Alice Key Potter (now Alice Potter Adams, wife of Newton Adams), if she shall have attained the age of twenty-five years at that time; with certain provisions as to the disposal of the respective shares in the case of the death of one or more of these three legatees before the death of the testatrix or before attaining the age of twenty-five years. These clauses also direct that in case any of the three shall be living and under the age of twenty-five years at the death of the testatrix, the executor shall hold his or her one-third share in trust, with powers of investment and re-investment, for him or her while under the age of twenty-five years, and pay it to him or her on attaining that age.

The testatrix in closing her said will makes the following provision: "TWENTIETH: I appoint my nephew Samuel A. Blatchford of the city, county and state of New York, the executor of and trustee under this my will, and direct that no bonds be required of him in either capacity."

Sophia E. Blatchford died at Newport, R. I., October 1,

1908. The will was duly probated at Newport, November 9, 1908, and Newton Adams was duly appointed and qualified, and is now the administrator of the estate with the will annexed, Samuel A. Blatchford, named in the will as executor and trustee, having died prior to the death of the testatrix. Newton Adams has also, by decree entered March 9, 1909, been appointed by the Superior Court of this State for the county of Newport substituted trustee under the will, and is now acting as such.

Alice Potter Adams has not yet attained the age of twenty-five years. Of the other two, Francis Hunter Potter was twenty-five years old at the death of the testatrix, and Philip Barton Key Potter became twenty-five less than three month later.

Subsequent to the appointment of said Newton Adams as said trustee and administrator, c. t. a., certain writs of attachment in actions at law against Francis Hunter Potter were levied upon the right, title, and interest of said Francis Hunter Potter in and to said real estate under said will; and there is of record in the recorder of deeds' office in said city of Newport a conveyance by Francis Hunter Potter to his wife, Gwendolyn Cary Potter, wherein he purports to convey one-third undivided interest in and to said property. Said deed is dated the seventeenth day of January, 1910, and recorded on the twelfth day of February, 1910. Otherwise there has been no conveyance of the property or any interest therein.

Newton Adams, in his two capacities as administrator and trustee, Philip Barton Key Potter and Francis Hunter Potter, as parties having adversary interests in the construction of the will and in the title to real estate to be dealt with under the will, have concurred in stating this case for the opinion of the Supreme Court. Since the filing of the petition certain of the attaching creditors above mentioned have entered their appearances and concurred in the statement of facts. The questions on which the opinion of the court is asked are as follows:

*First.* Did Francis Hunter Potter or Philip B. K. Potter receive, under the said will of Sophia E. Blatchford, any legal right, title, interest or estate in or to said Newport property

above described, which could be conveyed by them or upon which writs of attachment could be levied in actions at law against them?

*Second.* Can the said Newton Adams, as administrator with the will annexed of the estate of said Sophia E. Blatchford, sell and convey all the right, title, and interest of the said Sophia E. Blatchford at the time of her death in and to the said Newport property and give good and unencumbered title to a purchaser thereof?

*Third.* If the second question is answered in the negative, by whom can a sale and conveyance of said property be made, and who must concur in such sale and conveyance in order to pass a good title to a purchaser of said property?

By the sixteenth clause of the will all the residuary property, real and personal, is given to the executor, in trust to sell and convert the same into money, as soon as may conveniently be done after the death of the testatrix, and on such terms as he may deem proper, and to dispose of the proceeds of the sale in the manner set forth in the three following clauses of the will. Manifestly these four clauses of the will must be construed together in order to arrive at the intention of the testatrix. The direction is to make division *into " three equal shares,"* and to *" pay over"* one share to each of three persons, if they have respectively attained the age of twenty-five years; but to continue to hold in trust the share of any of the three who has not become twenty-five, with powers of investment and re-investment, in personal property, until he or she shall attain that age, and then to *" pay over."* It is quite clear that all of the language above quoted is consistent and only consistent with an express intention of the testatrix that all the residuary real estate be converted by her executor into personal property for the purpose of making the division into *"three equal shares."* As we construe the above provisions, the testatrix has most clearly and positively directed such conversion, and the whole scheme of the will, as set forth in the clauses above quoted, shows plainly the intention of the testatrix, that her beneficiaries under the provisions of the clauses quoted should receive personal prop-

erty and not real estate.    It was said by Durfee, C. J., in *King* v. *King*, 13 R. I. 501, at p. 506: "The question submitted in this case is: Did the seventh clause of the will of the late Edward King work an equitable conversion of the real estate therein disposed of into personalty?    The question, like other questions in regard to the effect of testamentary devises or bequests, is a question of what was the testator's intention; the rule being that in equity the property will be treated as being already what it was intended to become.    1 Story Eq. Juris. § 64 g; 2 Story Eq. Juris. §§ 1212–1214; *Fletcher* v. *Ashburner*, 1 Bro. Ch. Cas. 497; 1 *White & Tudor* Lead Cas. in Eq. *826, and note; *Craig* v. *Leslie*, 3 Wheat. 563; *Phelps, Executor*, v. *Pond*, 23 N. Y. 69; *Dodge et al.* v. *Williams et als.*, 46 Wis. 70, 97.    Did the testator intend to have his real estate, out and out, converted into personalty?    If he did, the court will give his intention effect by treating the real as personal property from the time of his decease."

(2)    In accord with the doctrine above set forth, it is well settled that an absolute and not discretionary direction to an executor in a will to sell the real estate and to distribute the proceeds of the sale as money or invest them in personal property, works an out and out conversion of the real estate into personalty so that the interests of the beneficiaries must be treated for all purposes in equity as personal and not real property from the date of the testator's death.

In the case of *Haszard* v. *Haszard*, 19 R. I. 374, a testator directed his wife as executrix to sell "at as early a period as in the opinion of my said wife shall be consistent with the interest of my estate," certain of his real estate and invest the proceeds, in the name of his four daughters, in one or more savings banks. The testator's wife as executrix, in pursuance of the power conferred upon her, sold the said real estate and also released her dower.    It is held that as there was no intimation in the will that the sale of the realty which the executrix was directed to make was for any specific purpose, the sale was an out and out conversion of such realty into personalty, and must be deemed to have been made from the testator's decease.

In *Van Zandt* v. *Garretson*, 21 R. I. 352, a testator had devised certain real estate to certain persons for their lives, and after their deaths directed that it should be sold and the proceeds of sale divided among their nieces. The beneficiaries under the will, after the executor had died without making any sale, contracted to sell the property in fee simple to the defendant, and upon his refusal to perform the contract, brought a bill in equity to compel performance. It was held that the direction in the will to sell this real estate and distribute the proceeds amounted to an equitable conversion of the estate into personalty; that the complainants could convey neither a legal nor an equitable title to the land itself; and it is also clear that the court was of the opinion that, the executor being dead, conveyance could only be made by an administrator with the will annexed. Hence the bill was dismissed.

And see *Peter* v. *Beverly*, 10 Peters, \*532, \*563; *Kane* v. *Gott*, 24 Wend. 641, 659; *Stagg* v. *Jackson*, 1 N. Y. 206; 7 Am. & Eng. Enc. of Law (2d Ed.), 465; 9 Cyc. 830, 834.

(3)  It is well settled that when a testator directs his executor to sell his real estate, a discretion given the executor as to the time, manner, or terms of sale, will not prevent an equitable conversion from taking place. 7 Am. & Eng. Enc. 468; 9 Cyc. 837. See also *Haszard* v. *Haszard*, 19 R. I. 374; *Van Zandt* v. *Garretson*, 21 R. I. 352; *Stagg* v. *Jackson*, 1 N. Y. 206, 212. It is also well settled that unless the conversion is expressly directed to be made at some definite or ascertainable time, the conversion takes place as of the date of the testator's death. *Doughty* v. *Bull*, 2 P. Wms. 320; 24 Eng. Reprint, 748; 9 Cyc. 837.

In the present case it is quite clear that under the will, the duty of the executor to sell is absolute and not discretionary. All the discretion that is given him is as to the time and terms of sale, and as to the time his discretion is confined to very narrow limits by the words "as soon as may be conveniently done after my decease." As to the duty of making a sale with reasonable promptness there is no discretion.

(4)    The executor is undoubtedly given a power of sale by the will, but it is not a power in the ordinary sense, which may or may not be exercised by the donee at his pleasure.   On the contrary, the power is given in trust and its exercise is compulsory.   As the result of its exercise must be to turn all the real estate into money, which the will directs to be paid to the ultimate beneficiaries, it is quite clear that the testatrix contemplated that these beneficiaries should get no share or interest in her real estate as such, but only a share in the proceeds of its sale.

(5)    There is no direct devise or bequest, to these beneficiaries, of any property, but only of money to be obtained from the sale of property.   The legal title to the real estate in question in this case is given to the executor, and the residuary legatees get no right, title, or interest in it, legal or equitable.   It follows that they have no right, title, or interest in the real estate which they can convey by deed or upon which attachment or execution can be levied; 7 Am. & Eng. Enc. 476; 9 Cyc. 851, 852.   We therefore hold that Francis Hunter Potter and Philip B. K. Potter received under the will no interest of any kind in the devised real estate as such, and we therefore answer the first question stated in the negative.

(6)    For convenience we here repeat the next question propounded, viz.: "*Second.*   Can the said Newton Adams, as administrator with the will annexed of the estate of said Sophia E. Blatchford, sell and convey all the right, title, and interest of the said Sophia E. Blatchford at the time of her death in and to the said Newport property, and give good and unencumbered title to a purchaser thereof?"   We have no hesitation in answering this question in the affirmative.   While it is a well-recognized rule that a mere naked power, the exercise of which is discretionary with the donee personally, and which is not coupled with an interest lasting beyond his life, fails with his death, yet is it equally well settled that a power coupled with an interest beyond the life of the donee, or given in trust in such a way that its exercise is mandatory, survives the death of the donee.   In trying to apply this rule to the case of a power of sale given by will to an executor, the courts early encountered the difficulty

that at common law an administrator c. t. a., can only deal with the personal property of the testator and can not exercise any powers given to the executor with reference to real estate. This difficulty has been remedied in most jurisdictions by the passage of statutes. The provision of the statutes of Rhode Island, dealing with the matter, is as follows (Gen. Laws, 1909, Ch. 312. § 26): "Executors for the time being, or administrators with·the will annexed, shall have the same powers to sell, lease, or mortgage, and make conveyance of real estate, as are given by will to the original executors, unless such powers be expressly given to such executors as individuals apart from such office, or provision to the contrary be made in the will." (Reënactment of C. P. A. § 840, 1905.)

We find, upon examination of the will here in question, that the power of sale and direction to sell are given to "my executor;" there is nothing in the will to indicate that it was the intention of the testatrix to give such power to the executor as an individual "apart from such office;" nor is there any provision that sale shall not be made by anyone other than the person named as executor. We think the statute plainly covers this case, and that the powers of sale vested in Newton Adams, administrator with the will annexed, upon his appointment and qualification as such, in accordance with former decisions of this court.

In the case of *Bailey* v. *Brown*, 9 R. I. 79, an administrator *de bonis non* with the will annexed sought to enforce specific performance of an agreement to purchase real estate of his testator. The clause of the will construed in the case, as appears in the opinion of the court, by Durfee, J., was as follows: "I direct that all my just debts be paid, and, for that purpose, I authorize the sale, by my executrix, of any of my estate—real or personal . . . I hereby charge all my real estate, with the payment of all legacies and annuities named in this will. . . . I appoint my wife guardian of the person and estate of my son, during his minority, and also executrix of this my will, and authorize her to sell any of my real estate, and request that no bond, or bond of a nomi-

nal amount only, be required of her, as my executrix." The court says that by the first clause above quoted from the will, an authority to sell real estate for the payment of debts was clearly given to the executrix, and by the last clause, an authority to sell was again given without any express limitation, and the question is whether it was given to the donee personally or as executrix. It is held that it was given to her as executrix and passed to the administrator with the will annexed.

In the case of the *Probate Court of Newport* v. *Hazard*, 13 R. I. 3, the court, by Durfee, C. J., says, at page 6: "As a general rule, independently of statute, a power to sell land given by will to an executor, will not devolve upon an administrator with the will annexed. But we have a statute, Gen. Stat. R. I. cap. 173, § 32, which provides that the administrator with the will annexed shall have the same power to sell and convey the real estate as may be given by the will to the executor or executors; and the question is, whether, under this statute, the administrator here did not succeed to the power conferred on the executor. The defendants, to show that he did not, cite the case of *Conklin* v. *Egerton's Adm'r*, 21 Wend. 430. In that case it was held, under a statute enacting that administrators with the will annexed should have the same rights and powers as if they had been named executors, that a power given to an executor by will to sell and dispose of real estate, and divide the proceeds, could not be executed by an administrator with the will annexed, because the statute was to be construed as communicating to the administrator only the powers which the executor had as executor, to wit, his power over the personalty. The construction was narrow and was not received with entire approval. *Egerton's Adm'r* v. *Conklin*, 25 Wend. 224; *In re Anderson's Estate*, 5 N. Y. Leg. Obs. 302. But, even if correctly decided, the case is no precedent for us; for by our statute the power to sell and convey real estate is communicated in express terms. Accordingly, in *Bailey* v. *Brown*, 9 R. I. 79, it was decided that an administrator with the will annexed is entitled to execute such a power for the purpose of paying debts and legacies." See

also, to the same effect, *Van Zandt* v. *Garretson*, 21 R. I. 352, 354.

The law as laid down in the foregoing cases is well supported in other States having statutes such as ours relating to the powers of an administrator with will annexed; it being held that where a power of sale is given by will to an executor for the purpose of paying debts and legacies, or either, and especially where the power of sale is imperative and does not grow out of a personal confidence in the individual and there is an equitable conversion of land into money for the purpose of such payment and distribution, the power belongs to the office of executor and passes to, and may be exercised by, an administrator with the will annexed. *Mott* v. *Ackerman*, 92 N. Y. 539 at 553; *Potts* v. *Breneman*, 182 Pa. St. 295; Chaplin on Express Trusts and Powers, §§ 604–606; 11 Am. & Eng. Enc. 1323, note 3. The rule is well expressed by Mr. Chaplin as follows, § 606, p. 490: "Where a testator devises land to his executors, with a power to sell in order to distribute, and the directions are such as to effect an equitable conversion, the title to the property (as personalty) vests in the executors, as such, by operation of law; and to accomplish the purpose of the imperative direction in the will, it is within their power, and is imposed on them as a duty, by virtue of their office as executors, to execute the power of sale. The proceeds, when received by them, would be legal assets in their hands for which they would be required to account. And all this is so though they are directed to hold a portion as trustees on a trust to receive and pay over rents. And a successor as *trustee* cannot execute the power. To do so he must succeed as administrator with the will annexed."

It is quite clear that the power of sale was vested in the executor as such, under clause sixteenth of the will, and was not vested in him under the provision of the three following clauses, wherein he is directed, in certain contingencies, to hold one or more "shares" of the fund derived from the conversion in trust until the party entitled to the same shall become twenty-five years of age. The real estate in question is

given to the executor as such, and the power of sale is plainly conferred in aid of executorial duties, for the purpose of facilitating the payment of legacies in the form desired by the testatrix. It is true that it may be necessary to hold some of the proceeds of the sale in trust for a time in consequence of one or more of the legatees named being under the age of twenty-five years, but that does not alter the nature of the power of sale.

(7) It is obvious that, if Samuel A. Blatchford had lived to execute the will completely, he would be acting strictly as executor in selling the land and dividing the proceeds of the sale and paying over their shares to the legatees who were over the age of twenty-five years; and that in holding the share of any one who was under that age he would be acting as trustee. His legal duty would be to transfer such share from himself as executor to himself as trustee. It follows, therefore, that Newton Adams holds the power of sale as administrator with the will annexed and must exercise it in that capacity, having no active duties to perform as trustee until he has set aside the share of Alice Potter Adams, which he is to hold in trust for her. This being so, it is the opinion of the court that he can, as administrator with the will annexed, sell and convey the

(8) Newport property involved in this case, so as to convey all the right, title, and interest which the said Sophia E. Blatchford had at the time of her death, in and to the said Newport property, free and clear of any incumbrances attempted to be placed upon it since that time, whether by way of attachment in the several suits at law, mentioned in the petition, or by way of the deed from Francis H. Potter to Gwendolyn Cary Potter, dated January 17, 1910, whereby it was purported to convey one-third undivided interest in the land in question to said Gwendolyn Cary Potter.

In view of the foregoing opinion, it becomes unnecessary to further answer the third question.

We have examined the arguments and cases cited by the counsel for the petitioners in support of views contrary to the decision hereinbefore set forth, and find nothing therein to

shake our conclusions. The cases cited relating to the question of equitable conversion are all cases where the courts, upon their construction of the various wills in question, found that there was no intention on the part of the testators to make an out and out conversion, dating from the testator's death, but only powers of sale resting in the discretion of the donee of the power. The cases cited on the question of whether the power of sale was personal to the individual named, or was given to the executor as such, *virtute officii*, and passed over to the administrator with the will annexed, are equally inconclusive of this case, because in each case the courts construed the will as showing an intention to repose confidence in the individual rather than to annex the power to the office; whereas our construction of the will here in question is otherwise, as above shown.

*Gardner, Pirce and Thornley* for Newton Adams, Admr., etc. *William W. Moss,* of counsel.

*Barney and Lee,* for Phillip B. K. Potter and Francis H. Potter.

*Francis I. McCanna,* of counsel.

*Sheffield, Levy and Harvey, Charles H. Koehne, Jr.,* for certain attaching creditors.