pointment of a guardian is to commit the custody of the guardianship, this court looks with great anxiety to the execution of the duty belonging to the guardian, and the attention expected to be paid to the reasonable wishes of the natural parent.  Though it is not necessary in this instance, upon such a contest it is important to observe that it can never end happily, but by implanting in the hearts of the children filial and dutiful feelings towards the parent; the best and most important duty imposed upon the guardian by the deceased parent." And a citation from Macpherson on Infants, p. 119: "If a guardian  *  *  *  does not behave to the satisfaction of the court, orders regulating his conduct are frequently made upon him." And in the case of *Ord* v. *Blackett*, 9 Mod. 116, cited in Macpherson on Infants, at page 121: "The representative of the deceased mother of a natural child was ordered to have free access to the child, though the latter was left under the superintendence of the father." He also cites section 2825, which simply provides that upon the return of the citation the surrogate must make such a decree in the premises as justice requires.  It will be seen that no authority is brought to my attention, nor am I able to find any, which would justify or permit the surrogate to make the provisions in the decree asked for.  Application granted, and decree signed.

---

## In re DEMAREST'S ESTATE.

*(Surrogate's Court, Rockland County.  November, 1888.)*

EXECUTORS—DEFAULT OF CO-EXECUTOR.
   An executor who purchases a farm originally belonging to the estate, and who pays his co-executor the balance of the purchase price still due the estate, is not liable for his co-executor's misappropriation of the payments; it appearing that when he made the payments the executor had no reason to suspect his co-executor's honesty or financial responsibility.

Application of Abram A. Demarest, executor, etc., of Abram J. Demarest, deceased, for the judicial settlement of his account.

*Edward Wills*, for executor.  *Alonzo Wheeler* and *Charles C. Suffern*, for contestant.

WEIANT, S.   Whether or not this executor should be held liable for the loss which has come to the estate because of the misappropriation of the funds that came into the custody of his brother Jacob, his co-executor, is a very important and vexatious question.  I have come to the conclusion that he ought not to be held for that loss.  The general rule is that an executor is responsible only for his own acts, and not for those of his associates.  Ordinarily, in the collection of assets, the rights of each one are alike, and one has not control or supremacy over the other.  He must in some way assent to the misapplication by the other.  He must be a consenting party to the waste, or neglect some duty consequent upon his knowledge of a misapplication intended or a duty omitted, which must be at the foundation of his liability. *Croft* v. *Williams*, 88 N. Y. 384.  Now, here, the funds never came to the accounting executor.  He became liable individually to the estate for a portion of the purchase price of the farm of his testator.  The farm was sold to Andrew, a brother of the executors, and then by him conveyed to the accounting executor.  Upon this latter sale the executor gave his note to his co-executors for $30,000, payable in four months, and assumed the payment of the $8,000 mortgage which Andrew had given upon the farm to the executors when he purchased.  He thus became an individual debtor to the estate, and was bound to discharge these obligations by paying to the executors.  Indeed, under the form of these obligations, it is doubtful whether he could discharge his individual liability in any other way than by such payment to his co-executors.  However, he had the right to discharge this individual indebtedness by paying to his co-executors.  He did so, and this was all that he did

that contributed to bring the funds to the hands of his co-executors.   All of the persons interested in the estate then regarded Jacob as a man of property and financial responsibility, including the contestant.   No misapplication or dishonesty was threatened or manifest, or even suspected.   I cannot believe it to be the law that this executor can be held liable, under such circumstances, for simply paying his individual indebtedness to his co-executors.   It may be that this was in fact a purchase by the executor, and that the sale could have been avoided; but no such claim has ever been made, and the purchase must therefore be regarded as an individual transaction between himself and his brother Andrew, whereby he came into Andrew's stead as a purchaser of the farm.   I think the matter should be regarded differently from an instance where funds have actually come into the custody of an executor as such, and then paid by him over to his co-executor.   As to whether or not the accounting executor was negligent in the discharge of his duty, after knowledge or information of misapplication intended or in progress, is a question of fact upon the evidence, and I am not convinced that he has been derelict to an extent that would call upon him to make good the loss.   The executor could not be swift to suspect his brother, whom all had trusted alike, of an intention of wronging his mother, and his brothers and sisters.   The question is somewhat marginal, and not without some facts and circumstances bearing against the executor; but upon the whole case I should not hold him liable for the loss. The case of *Croft* v. *Williams, supra,* was stronger upon the facts against the executor, and he was held not liable.   In all of the many cases cited by the counsel for the contestant, where the executor has been held for the *devastavit,* the case is distinguishable from this upon the facts.   In no one of them are the facts bearing against the executors so meager as in this.

---

### *In re* ROLPH'S ESTATE.

(*Surrogate's Court, Chautauqua County.*   February 10, 1890.)

ADMINISTRATORS—ACCOUNTS—APPLICATION OF PERSONALTY FOR BENEFIT OF REALTY.
Where an administratrix, who is also general guardian of the children of her intestate, applies the personal estate to the discharge of incumbrances, and payment of taxes and insurance, and necessary repairs on the real estate, which payments are for the protection and preservation of the realty, and of the interest therein of her wards, who live with and are maintained by her, her account, as to such application, will be allowed.

This is a petition for an account by Jane E. Rolph as administratrix of Worthy N. Rolph.   The respondents are the minor children and heirs at law of the intestate, who appear by one Martin as special guardian.

*H. C. Kingsbury,* for petitioner.   *Van Dusen & Martin,* for respondents.

SHERMAN, S.   The deceased died, intestate, August 12, 1880, leaving, him surviving, Jane E. Rolph, his widow, now Williams, and 4 minor children, of the ages of 13, 10, and 7 years, and the youngest 7 months.   He owned at the time of his death a farm of 51 acres in the town of Stockton, of the estimated value of about $1,200, and personal property of the value of about $500, and besides having insurance on his life of about $2,000, payable to his estate.   The widow was appointed administratrix on August 21, 1880, nine days after the decease of her husband, and collected such insurance, and took possession of the personal property, and an inventory was duly made and filed, September 13th of the same year, showing the value of personal property, including such insurance, at about $2,567, and including the widow's statutory exemption of $150 set off to her therein.   The said widow and administratrix was duly appointed guardian of the persons and property of her four minor children, November 15, 1880, and duly qualified, and has not been discharged.   During several weeks prior to his death, the deceased had been purchasing lumber and materials, and making necessary repairs on the small