In the Matter of the Judicial Settlement of the Account of EDGAR J. SHIPMAN, as Executor, etc., of HARRIET C. SHIPMAN, Deceased.

*When a surrogate cannot require an executor to give security — the power is limited to the authority conferred by section 2685 of the Code of Civil Procedure.*

In 1882 Mrs. Shipman died leaving a will, by the fifteenth clause of which she gave her residuary estate to her husband, Edgar J. Shipman, absolutely. By the sixteenth clause she revoked the bequests of the fifteenth, should children be thereafter born to her and survive her, and in that event gave her residuary estate to her husband " during his life, to be divided equally between our surviving children after his death," and she appointed her husband the executor. One child was subsequently born to and survived Mrs. Shipman.

Upon the judicial settlement of Mr. Shipman's accounts as executor the Surrogate's Court authorized him to pay over to himself, as life-tenant, the residuary estate, upon his giving security to protect the interests in remainder, and also directed that, in case Mr. Shipman should individually decline to receive the *corpus* of the estate upon the condition of giving security, he should then, as a condition of retaining it as executor, give a similar bond, and in default of giving such bond that he should deposit the entire fund with the chamberlain of the city of New York, to be by him invested, he to pay the income to the tenant for life and the principal to the remainderman upon the termination of the life estate.

*Held*, that the latter part of the decree was made without authority, as the surrogate thereby attached to the executor's office a condition imposed neither by law nor by the testatrix.

That the surrogate's power was limited to the revocation of the letters testamentary for one of the causes specified in section 2685 of the Code of Civil Procedure.

That, as in the case at bar there was no trust relation other than that attached to every executor's office, nor any provision in the will calling for the exercise of judgment or discretion, that there was no rule of law or requirement of public policy which, under such circumstances, and in the absence, as matter of fact, of any necessity therefor, which authorized the court to require security from the executor and, in case of non-compliance, to compel the deposit of the estate with a public official, thus, in effect, removing the executor from his office and frustrating the will of the testatrix.

Appeal by Edgar J. Shipman, as executor of the last will and testament of Harriet C. Shipman, deceased, from that portion of a decree made at the New York Surrogate's Court on March 18, 1889, which required the executor to give security as a condition of retaining the residuary estate.

*Lewis L. Delafield*, for the executor, appellant.

*Meyer Butzel*, special guardian, respondent.

BARRETT, J.:

Mrs. Shipman died in 1882, leaving a will which contained alter native provisions. By the fifteenth clause of this will she devised her entire residuary estate to her husband, Edgar J. Shipman, "abso-lutely." By the sixteenth clause she revoked the bequests of the fifteenth, should children be thereafter born to and survive her. In the latter event she devised her entire residuary estate to her husband "during his life, to be divided equally between our surviving children after his death," and she appointed her husband as executor. One child was subsequently born to and survived Mrs. Shipman. Mr. Shipman is thus entitled to the residuary estate for life and the remainder is vested in the child. Upon the judicial settlement of Mr. Shipman's account as executor, the surrogate authorized him to pay over to himself, as life tenant, the residuary estate upon his giving security to protect the remainderman. This direction is acquiesced in by Mr. Shipman. But the surrogate further decreed that in case Mr. Shipman should individually decline to receive the *corpus* of the estate upon the condition as to security, he should then, as a condition of retaining it as executor, give a similar bond, and in default of giving such bond that he should deposit the entire fund with the chamberlain, the latter official then "to invest the same and pay the income to said life tenant," and the principal of said fund to the remainderman upon the termination of the life estate."

From this part of the decree Mr. Shipman appeals. It seems, quite plain to us that this part of the decree was without authority. The surrogate thereby attached to the executorial office a condition imposed neither by law nor by the testatrix. The surrogate's power is limited to the revocation of the letters testamentary for one of the causes specified in section 2685 of the Code of Civil Procedure. It is not pretended that Mr. Shipman's case comes within any of these causes. He is admitted to be a gentleman of probity, and of ample responsibility, and there is no suggestion of misconduct or of personal disqualification. The decree is founded solely upon the fact that the life estate and the executorial office are united in the

same person, and that the principle which requires security from the life tenant, when the *corpus* of the estate is delivered over to him, would be frustrated if Mr. Shipman were permitted to retain the estate as executor without security. The answer to this suggestion is *that such was Mrs. Shipman's will,* and that, however desirous the courts may be to afford special protection to the remainderman (especially when the latter is an infant), they cannot effect that end by frustrating the lawful intention of the testatrix. She evidently had implicit confidence in her husband ; she always speaks of him as her "dear husband." She gave him her entire estate *absolutely* in case she died childless. In the alternative disposition she uses the simplest language, words suggestive of complete trust. She undoubtedly acted upon the not unnatural idea that he would treat his own children honestly. A provision in such a will appointing her "dear husband" executor, *upon his giving a bond to secure the children,* would have been most surprising and incongruous. The surrogate fell into an error in supposing that the executorial function will cease upon the settlement of the accounts and the entry of the decree thereon, and that thereafter the executor will hold the estate as a trustee under the will. There is, of course, a species of trust attached to every executorial office, and, as was said by the chancellor in *Bowers* v. *Smith* (10 Paige, 199), "the executor always takes the legal title to the personal estate of the testator as a trustee." That meant nothing more than that he was within the jurisdiction of the Court of Chancery. But there is a wide difference between the trust which is attached to the executorial office and an active trust founded upon the creation of a trust estate. Here there is no trust estate, no active trust, and no testamentary trustee. The duty of the executor as such continues until the falling in of the life estate.

This is the settled rule as laid down in a long line of cases. (*Spear* v. *Tinkham,* 2 Barb. Ch., 214; *Covenhoven* v. *Shuler,* 2 Paige Ch., 132; *Livingston* v. *Murray,* 68 N. Y., 492; *Smith* v. *Van Ostrand,* 64 id. 281; *Bliven* v. *Seymour,* 88 id. 477.) That duty is to convert the personal estate into money, invest it in permanent securities and pay over the income to the life tenant. This duty has been unconditionally imposed upon the present executor by the testatrix, and for that purpose he has been put in lawful possession

of the estate. He can neither be deprived of that possession nor prevented from performing that duty so long as he conducts himself with propriety and violates no provision of law. The error complained of, doubtless, grew out of a supposed analogy between the security ordinarily required of a life tenant and the security required by the present decree. It will be observed, however, that a life tenant is not absolutely entitled to the possession of the estate, and that the intention of the testator limits him to the enjoyment of the income. To effectuate that enjoyment in the most advantageous manner, and at the least expense to himself, he is permitted to take the *corpus* of the estate upon giving adequate security to the remainderman. If he is unable to furnish such security, the executor must retain the principal and pay over to him the income. Thus the delivery of the principal to the life tenant is in the nature of a favor to which a court of equity attaches the just condition of adequate security. Here, however, the executor asks no favor. The *corpus* of the estate is in his hands, intrusted to him by the testatrix, and his position with regard to it is the same, in principle, as if the life estate were vested in another person.

The cases, with regard to trustees and *cestuis que trust*, are entirely inapplicable. They proceed upon the principle that a beneficiary should not be permitted to act as trustee for himself, *where the exercise of discretion or judgment* is called for, as, where the income of a trust fund is to be applied to the maintenance of a particular beneficiary, with discretion in the trustee, in case the income prove insufficient, to apply part of the principal. There, and in similar exercises of judgment, it would be manifestly improper that the trustee and beneficiary should be united in the same person. Such is the principle of *Bundy* v. *Bundy* (38 N. Y., 410) and of *Rogers* v. *Rogers* (111 N. Y., 228). In both of these cases there were trust estates. In the former the court required the executors to give security, *not, however, as executors, but as trustees.* The duty there under consideration was not attached to the executorial office, and as no trustee to perform the duty was named in the will, the court regarded the provision for security as, in effect, a conditional appointment as trustee. Judge GROVER's language makes this entirely clear: "The judgment provides that the executors, upon giving proper security, shall continue in charge of the fund. In this there

is no error. The will not having designated a trustee for this purpose, it was competent for the court to appoint a trustee. This may be regarded as such appointment."

In *Rogers* v. *Rogers* the court held that the fact that one of several testamentary trustees is a beneficiary did not incapacitate him from acting as trustee. He was simply disqualified from sitting in judgment upon his own rights or privileges. In the latter respect his co-trustees could exercise the control and judgment improper for him, and in case the other trustees declined to act, the court could either supply their place or take upon itself the execution of the trust, so far as it ought not to be executed by the trustee and beneficiary.

These cases are in entire harmony with the general principle that although the court, when called upon to appoint a trustee, will not ordinarily appoint as such a *cestui que trust*, yet the latter is not absolutely, and under all circumstances, excluded from occupying the trustee relation for his own benefit. (*Moke* v. *Norrie*, 14 Hun, 128; Perry on Trusts, § 59; *Ex parte Conybeare's Settlement*, 1 Week. Rep., 458; *In re Moke*, 2 Redf., 430.)

In the case at bar there is, as we have seen, no trust relation other than that attached to every executorial office. Nor is there any provision in the will calling for the exercise of judgment or discretion. The executor's duties here are such as the law ordinarily imposes on executors. They are, indeed, unusually simple. He is called upon to invest the estate in permanent securities and to pay over to himself the income for life — when the principal goes to his son. There is no rule of law or requirement of public policy which, under such circumstances and in the absence, as matter of fact, of any necessity, authorizes the court to require security from the executor, and in case of non-compliance to compel the deposit of the estate with a public official, thus, in effect, removing the executor and frustrating the will of the testatrix.

The part of the decree appealed from should be reversed and a decree made, in accordance with the views herein expressed, with costs to the executor to be paid from the estate, and also the costs and disbursements of the guardian *ad litem* to be taxed and paid out of the estate.

VAN BRUNT, P. J., concurred.

The part of the decree appealed from should be reversed and a decree made, in accordance with the views expressed in opinion, with costs to the executors to be paid from the estate, and also the costs and disbursements of the guardian *ad litem* to be taxed and paid out of the estate.