represented. While the referee ruled properly in excluding the testimony as to the assets of the business bequeathed to the two.sons, and the profits realized therein, when offered by him in his capacity as counsel for the devisee, he fell into error in not distinguishing between the merits of the objection as urged in her behalf, and when urged for the creditor. The latter is not bound to accept the provisions of the will making his debt a charge upon the rents of the realty, nor does the provision in that behalf exonerate the personalty from liability. Personalty constitutes the fund which is, in the first instance, applicable to the payment of debts, and whatever rights the legatee obtained under the will is subject to the debts of the decedent. It was the right, therefore, of any creditor, to pursue this personalty, and to surcharge the accounts of the executor with any.increase thereof, with the ultimate purpose of having the same applied to the discharge of the obligation held by him. In this respect the referee erred.

Objection was made by the contestants to the compromise by the executor of a judgment in the sum of $852 for $500. The executor testified that it was the best settlement that could be effected at that time, and was made under the advice of the attorney who then represented the estate. No application was made to the surrogate to authorize this compromise, nor is any evidence adduced, either on behalf of the contestants or of the executor, as to the facts and circumstances under which the compromise was effected. It was the duty of the executor to establish affirmatively the propriety of the compromise. In view of this condition of the proof, the objection must be sustained.

I have carefully examined the testimony with reference to the other objections and exceptions interposed, and am of opinion that the report of the referee was correct. My conclusions, however, with reference to the objections discussed, necessitate the denial of the motion to confirm the referee's report.

This proceeding was instituted by the executor for a judicial settlement. His co-executor, who qualified, died subsequent to the issuance of letters, and the survivor procured the issuance to himself of letters testamentary upon his estate. In the present proceeding he cites himself as executor of the estate of his co-executor. Before a decree can be entered in this proceeding directing distribution, all the parties interested in the estate of John H. Quinn, the deceased co-executor and legatee, must be cited. *Fisher* v. *Banta,* 66 N. Y. 468; *Solomons* v. *Kursheedt,* 3 Dem. Sur. 310.

---

## In re KENNEDY's ESTATE.

(*Surrogate's Court, New York County.* March 19, 1890.)

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—COMPOUND INTEREST.

An administratrix will not be charged with compound interest on final settlement, where she acted in good faith, and the next of kin have acquiesced in her acts for 15 years.

Hearing of exceptions to referee's report on the settlement of the executrix of John A. Kennedy, deceased.

*T. W. Foster,* for administratrix. *W H. Mundy,* (*Benjamin Wright,* of counsel,) for contestant. *Michael J. Scanlan,* special guardian.

RANSOM, S. The good faith of the administratrix is found by the referee, and is manifest from the testimony. I am of opinion, therefore, that in the exercise of the discretion lodged in the court by the law with reference to imposing the penalty of compound interest, I must overrule the referee in that regard. Compound interest is allowable in cases of gross delinquency, or as a penalty for negligence or wrong-doing, or for some clear violation of a trust. There is no uniform rule of redress, but each case calls for the exercise of the judicial discretion of the court. *Thorn* v. *Garner,* 42 Hun, 514. A recent case upon this subject, which contains a comprehensive review of the author-

ities, is *Cruce* v. *Cruce*, 81 Mo. 676–686, and the court reached the conclusion that "all orders for periodical rests and for compounding interest should be adopted, not for punishing the delinquent trustee, but for the purpose of attaining the actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee." The doctrine thus stated is but a reiteration of the law as laid down in our own state. *Insurance Co.* v. *Lynch*, 11 Paige, 520. In that case the court stated the rule to be: "The court in charging a trustee with interest, when he has mingled the trust fund with his own, or has neglected his duty in relation to the fund, does not always proceed upon the ground that the trustee has made a profit by his breach of trust. It is true he is not permitted to make a profit out of the trust fund for his own benefit, and if he has employed the fund in trade, whereby he has made more than simple interest, he may be charged with the whole of such profits, either by making periodical rests and charging him with compound interest, or in such other manner as may best carry out the principle of giving the *cestui que trust* the benefit of all profits made beyond the simple interest. * * * In cases of that kind, the principle of the court appears to be to allow simple interest only where it is evident that the profits made by the trustee could not have exceeded that amount, but if it is doubtful whether the profits were not greater, then to allow the *cestui que trust* to elect between such interest and an inquiry as to the actual profits made out of the trust fund. Stating the account with periodical rests, and compounding the interest, is only a convenient mode adopted by the court to charge the trustee with the amount of profits supposed to have been made by him in the use of the money, where the actual amount of profits which he has made, beyond simple interest, cannot be ascertained." See, also, *Wyckoff* v. *Van Siclen*, 3 Dem. Sur. 75; *Clarkson* v. *De Peyster*, Hopk. Ch. 424; *Baker* v. *Disbrow*, 18 Hun, 29. For a mere failure to invest, simple interest will be charged. *Thorn* v. *Garner*, *supra; Duffy* v. *Duncan*, 32 Barb. 587. In this last case, assignees for the benefit of creditors retained a large sum of money for many years without any effort on their part to distribute it among their *cestuis que trustent*. The money was commingled with their individual funds. Held, that they were chargeable with simple interest thereon, although there may have been no profit by their use. In *Lansing* v. *Lansing*, 45 Barb. 182, it was held that, if the trustee negligently suffers trust moneys to lie idle, he is chargeable with simple interest. If he converts the trust moneys to his own use, and employs them in business or trade, he is chargeable with compound interest. While trustees are held to great strictness in the management of trust funds, the court will deal leniently with them when it appears that they have acted in good faith, and, if no improper motive can be attributed to the trustee, the court will excuse the apparent breach of trust, unless the negligence is very gross. In the present case, I am of opinion that a proper case is presented for the simple indemnification of the *cestuis que trustent*. To that end, the charges of compound interest made by the referee will be disallowed. In case of the reinvestment of the proceeds of the sale of the Broadway Seventh-Avenue Railway stock, the administratrix should be charged with the amount of interest received by her thereon, and with simple interest upon the periodical payments from the date of their receipt to the date of the account. The interest upon the sum referred to in the seventeenth finding, and likewise upon the value of the library, should be simple interest. The same applies to the interest upon dividends and other sums received periodically from the securities held by the administratrix. She should be charged with simple interest upon such sums from the date of their receipt to the date of the account. The evidence relied upon to support the surcharging the account with $250, referred to in the sixteenth finding, while probably sufficient for that purpose, is still entitled to no more weight or consideration than the testimony immediately succeeding, which should entitle her to credit for its payment to the

next of kin. Properly stated, the account should debit and credit her with the same, without interest. My conclusion not to charge the administratrix with compound interest is founded upon her good faith, evidenced in many ways apart from her refusal to interpose the apparent defense of the statute of limitations, and upon the acquiescence of the next of kin for more than 15 years. It is plain the referee would have acted likewise had he been of the opinion that he had discretion in the matter. In all respects, except as above indicated, the report of the referee is confirmed.

---

## In re BABCOCK'S ESTATE.

(*Surrogate's Court, Cattaraugus County.* October 31, 1889.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—FAILURE TO PAY MORTGAGE.

Executors sold testator's farm, providing by the terms of sale that the purchaser should, as part of the purchase price, pay a mortgage thereon held by one of the executors. The entire purchase money was, however, paid to the executors, and retained by them, uninvested, while the mortgage was left unpaid and drawing interest. *Held,* on a settlement of the estate, that the mortgage would be treated as paid at the time of the sale.

2. SAME—RETAINER OF UNAUTHENTICATED CLAIM.

An executor held testator's note, taken in payment of overdue interest on a mortgage. The executor, without authority of the surrogate, as required by 4 Rev. St. N. Y. (8th Ed.) p. 2561, § 33, paid this out of the funds of the estate. It afterwards appeared that the funds would be insufficient to pay all the debts. *Held,* that he could not then claim that the note was merely evidence of the debt, and that the interest was still a lien on the mortgaged property.

3. SAME—INTEREST.

An executor deposited the money belonging to the estate in a bank, of which he was the president and principal stockholder. It remained there 18 months before the settlement of his accounts. *Held,* that he would be charged with the rate of interest allowed on time deposits.

On application for the judicial settlement of the estate of John A. Babcock, deceased.

*M. V. Benson,* executor, in person. *J. G. Johnson,* for executor Dow. *Crowley & Reilly,* for contestants.

SPRING, S. Although this controversy has jingled along two years, and the papers in the case are voluminous, yet the real difference between the parties is slight. I append a summary statement of the account, as I regard it established: The executors sold the home farm of testator for $5,632, April 22, 1886, but the money therefor was not paid until the 19th of the succeeding month, so that the executors received in interest $23.76. By the terms of the contract of sale the purchaser was to assume the payment of the mortgage held by the executor, Mr. Dow, and which was an incumbrance on this farm; but it seems the entire purchase money was paid to the executors. The Dow mortgage should then have been paid. It was not fair to the *cestuis que trustent* to retain this money uninvested, and permit his mortgage to be earning interest from the estate; and I have accordingly treated the bond and mortgages as paid May 19, 1886, which is in accordance with the agreement made with the purchaser of this land.

The interest on the mortgage had not been kept up by the testator; and Mr. Dow at one time had a settlement with him, and took his note of $381.36 in payment of this interest, as Mr. Dow testifies. This note Mr. Dow paid out of the funds of the estate. He had no right to do this until it had been judicially established. Rev. St. (Banks & Bros. 8th Ed.) p. 2561, pt. 2, c. 6, art. 2, § 33; Code Civil Proc. § 2739; *Neilley* v. *Neilley,* 89 N. Y. 352; *Snyder* v. *Snyder,* 96 N. Y. 88. If there had been sufficient funds to pay the debts of the deceased, this would have been only a technical error; but it seems the property will be insufficient to pay the claims against testator, and his course gives his own claim a preference over others of the same class. His counsel