## *In re* GOETSCHIUS' ESTATE.

### (2 Misc. Rep. 278.)

*(Surrogate's Court, Rockland County, Filed February 13, 1893.)*

1. EXECUTORS—ACCOUNTING—REAL ESTATE.

   A testator devised and bequeahted to his wife, the use, occupation, income and profit of all his real and personal estate for her life, and directed that two of his sons (also named as his executors) should cut, haul and prepare for burning, firewood sufficient for her use. No duties were charged upon the executors with respect to the application of the income. *Held,* that the gift of the income of the real estate to the wife created an estate in the realty itself, and that the executors were not bound to account for the income of the real estate, or as to the cutting of wood and timber.

2. SAME—PERSONAL ESTATE.

   In such case the executors retained the custody and management of the personal estate. *Held,* that if the income was collected by them without power under the will, they were only liable individually, and the court had no power to entertain an accounting therefor.

3. SAME—PERSONAL ESTATE—INCOME.

   The executors invested part of the personal estate and used the remainder for their individual purposes. They paid the widow the income of the investments, and for legal interest on the moneys expended for their own use they paid her with cash, goods from their store, and by paying taxes for her. The evidence of witnesses other than that of the executors was given of payments in money and kind to the widow, who, it was also shown, paid sometimes for goods received from the executors. *Held,* that even if the latter were accountable for the income of the personal estate, the evidence was insufficient to charge them with any balance of income for which they were liable to pay the widow or her executors.

4. SAME—LIABILITY FOR PRINCIPAL.

   One of the executors died during the widow's life. *Held,* that the survivor was accountable for the principal personal estate, except as to the value of articles of personal property which he placed in charge of the widow for her use, and which were lost by ordinary use and wear.

5. SAME—SURVIVING EXECUTOR—CREDIT.

The decedent executor had purchased part of the personal estate, for which he did not pay. *Held,* that as he had an equal right to the custody of the property of the estate, the surviving executor was not liable for the purchase price.

6. SAME—CREDIT FOR INTEREST.

When the executors could, out of moneys in their hands, have paid off the amount of a note due by testator, within a reasonable time after they entered upon their administration of the estate, they will not be allowed for accruing interest paid on the note.

7. SAME—COSTS OF ACCOUNTING.

An item for legal services on the accounting cannot be properly charged in the account. Such is a matter for adjustment upon the allowance and taxation of costs in the proceeding.

Judicial settlement of executor's accounts.

Snider & Hopper, for executor; Arthur S. Tompkins and D. D. Sully, for contestants.

WEIANT, S.—The testator, Harmon Goetschius, died on or about August 19, 1859, leaving a last will and testament, which was admitted to probate by the Surrogate's Court of this county on or about November 28, 1859, and letters testamentary thereof were thereupon issued to the executors therein appointed, the accounting party hereto, John H. Goetschius, and one George Goetschius, two sons of the testator. The executors caused an inventory of the personal estate of the deceased to be made and filed in said surrogate's office on the 19th day of December, 1859, showing assets amounting to $2,282.10. The two executors entered upon the administration of the estate, and continued therein together until the death of George, in the year 1870, since which time the accounting executor has solely acted in such administration. The widow of the testator, Fanny Goetschius died on or about April 19, 1891, leaving a last will and testament, which was thereafter, on May 25, 1891, proved, and letters testamentary granted to Stephen Van Orden and John R. Wanamaker, as executors thereof. The testator by his will,

by request and devise, made the following provision for his widow:

"I give, bequeath and devise to my beloved wife, Fanny, the use and occupation, income and profit of all my real and personal estate, to have and to hold the same for and during her natural life; and I do further order and direct that my sons, John Henry and George, shall cut, haul, and prepare for burning, firewood sufficient for her use; and, further, it is my wish and desire that she remain in the house we now occupy, but if she prefers to take up her residence with any other person or place, she is at liberty to do so; and she is at liberty to surrender her claim, or any part thereof, to my estate to my children, if she thinks proper; and after her death I give, devise, and bequeath my real and personal estate to my children and grandchildren in manner and form following, to wit."

Here follows a devise of a parcel of land to his daughter Catherine; a devise to his sons, John Henry and George, of the remainder of his real estate in the town of Ramapo; a bequest of the sum of $800 to Catherine Louisa, the daughter of the testator's deceased son, Stephen, to become due and payable when she shall arrive at the age of 21 years, but if the testator's wife, Fanny, is living at that time, then to become due and payable to her one year after the death of his said wife; a bequest of $100 to a grandson, Harmon Goetschius Bogart, together with certain specific articles of personalty; a bequest to Elizabeth Bogart and Harmon Goetschius, children of the testator's deceased daughter, Maria, each of $500, to become due as they respectively arrive at the age of 21 years, or, if the testator's said wife is then living, then to become due one year after her death, and in certain contingencies to the survivor; a legacy of $100 to Henrietta, the widow of testator's son, Stephen; a devise and bequest of the portion of the estate of George M. Goetschius, deceased, which the testator expected to receive on the distribution of that estate, to his daughter, Catherine, and his two sons, John and George; and a devise and bequest of all the rest, residue and remainder of his estate to his three children, Catherine,

John and George, and his grandchildren, Catherine Louisa
Goetschius, Elizabeth Bogart and Harmon Goetschius Bogart,
to be equally divided between them, share and share alike. It
thus appears that the executors, as such, are given no authority ·
or control over the real estate of the testator; and the considera-
tion and investigation of the income or profits arising therefrom,
and disbursements on account thereof, may be dismissed from
this accounting. Those are matters to be adjusted between the
individuals to whom the real estate was devised, respectively, or
their legal representatives. The executors, as such, were not
clothed with any duty or authority as to the same. A gift to
the testator's widow of the rents and income of the real estate
for life creates an estate in the realty itself, and, if no duties
are charged upon the executors with respect to their application,
no estate or trust is created in them in respect thereto. Macy v.
Sawyer, 66 How. Pr. 381; *In re* Blauvelt, 131 N. Y. 249, 30
N. E. Rep. 194; *In re* Blow (Surr.), 11 N. Y. Supp. 193. As
to the cutting of wood and timber from the lands devised by the ·
testator, it also follows that this court has no jurisdiction to
hear or determine the same. That is an individual matter be-
tween the devisees and the executors in their individual capac-
ity. As to the personal estate, no duty seems to have been
devolved upon the executors until after the death of the widow,
and then only to make distribution of the same in accordance
with the directions of the will, after payment of debts and
burial expenses, which must necessarily have precedence. Dur-
ing the widow's lifetime, the "use and occupation" of all of the
estate, real and personal, are given directly to the widow. No
direction is given to the executors in reference to the same.
They are not clothed with any express trust to receive and apply
the income thereof, for the same is given directly to the widow.
It seems, however, that title to, and right of custody of, the per-
sonalty, where the contrary is not expressly provided, is pri-
marily in the executors, for the purpose of keeping and protect-
ing the same for final disposition in accordance with law and
the directions of the will. There is a species of trust attached

to every executorial office, and as was said by the chancellor in Bowers v. Smith, 10 Paige, 199, "the executor always takes the legal title to the personal estate of the testator as a trustee." *In re* Shipman's Estate (Sup.), 6 N. Y. Supp. 276. "But there is a wide difference between the trust which is attached to the executorial office and an active trust founded upon the creation of a trust estate. Here there is no trust estate, no active trust, and no testamentary trustee. The duty of the executor, as such, continues until the falling in of the life estate. This is the settled rule as laid down in a long line of cases." Id., and cases there cited. "When a life estate is bequeathed in a sum of money with remainder over, the legatee is entitled only to the income, and the principal, subject to the life estate, belongs to the remainder-man; and, unless otherwise directed by the will, it is the duty of the executor either to invest the money, and pay the interest to the first legatee during life, and preserve the principal for the remainder-man, or, on paying it over to the legatee, to require security from him for the protection of the remainder-man in respect to the principal." Smith v. Van Ostrand, 64 N. Y. 278-282. "In such a case there is no other trust than the law created and vests in the executors. They take the legal title to all personal property. They must convert it into money, pay debts, expenses, and specific legacies, if any; and, as they are bound to execute all the provision of the will, they are charged with a duty, as it were, to A. and B. They must give to A. what belongs to him, and then to B. what belongs to him." Livingston v. Murray, 68 N. Y. 485-492.

The executors here having retained the custody and management of the personal estate, the executors of the will of the widow claim that they are accountable for the same, as executors, for both principal and income. I am not fully convinced that such contention is well founded. If the income was collected by them without power under the will, then they become liable individually, and this court would have no jurisdiction to entertain an accounting therefor. *In re* Cooley, 6 Dem. Sur. 77, and cases there cited; *In re* Blow (Surr.) 11 N. Y.

Supp. 193.    But if it be assumed that the executors, as such, are here accountable for the income, upon the whole case it does not appear that they have been shown to have any balance thereof in their hands.    The testimony discloses that the personal estate has been in part invested and in part used and applied to the individual purposes of the executors.    They are chargeable with such interest as the evidence—which is without conflict—discloses that the investments earned, as well as for all profits realized on the sale or exchange of the securities, for they cannot make any individual gain from the trust funds. *In re* Butler (Surr.) 9 N. Y. Supp. 641.    For such portion of the funds as they used for and applied to their individual benefit, they must be charged with the legal rate of interest then prevailing.    It is not a case for charging compound interest, under the circumstances.    *In re* Kennedy (Surr.), 9 N. Y. Supp. 552.    This income, however, was payable to and belonged to the widow.    The accounting executor claims that all of it was paid to her in her lifetime, as the same was collected, either in cash, coupons, payments in her behalf, or by goods which she received from his store.    But three receipts, however, are produced which show payments of interest collected.    These were given in 1864 and 1865, and are for interest accrued on savings bank deposits and a bond and mortgage.    The surviving executor testified to his having paid the widow all income received by them, and, for the interest lawfully due the widow from the executors for the funds applied to their personal use, that they paid her with cash, goods from their store, and by paying taxes for her at her instance, which she, as life tenant, was bound to pay, and produced receipts showing such payments.    The executor is somewhat corroborated by other witnesses, who knew of payments made to the widow, and who knew of her obtaining goods from the executors' store.    Sometimes the widow paid for goods she received, which lends an inference that the executors had paid her all accrued interest, for she would most probably not have paid for any goods if the executors were indebted to her for income to which she was

entitled.    The executors do not seem, at least for many years, to have kept any accounts of their transactions with the widow, and the evidence is so general and indefinite that no satisfactory conclusion can be reached.    It appears, however, even assuming that the executors, as such, are accountable for the income of the personal estate, that the evidence is insufficient to charge the executors with any balance of income for which they were liable to pay to the widow, or now to her executors.    Again, it may be that all liabilities for such income, collected more than six years prior to the widow's death, are barred by the statute of limitations.    Foster v. Town, 2 Dem. Sur. 333; *In re* Nicholls (Surr.) 8 N. Y. Supp. 7; Mills v. Mills, 115 N· Y. 80, 21 N. E. Rep. 714; Brooks v. Brooks, 4 Redf. Sur. 313; *In re* Dunham (Surr.), 6 N. Y. Supp. 563; *In re* Clayton (Surr.), 5 N. Y. Supp. 266; Roberts v. Ely, 113 N. Y. 128, 20 N. E. Rep. 606.

As to the principal personal estate, the surviving executor is accountable for the same.    In his inventory he charges himself with $2,280.10 of assets.    As against this, he is entitled to credit for the $8.75 of accrued interest paid the widow; also, the value of the articles of personal property which he placed in the charge of the widow for her use, to which she was entitled under the will, as the same appears to have been lost by ordinary use and wear by her, except the horse, bought by the executor George Goetschius for $45, and for which he never paid.    As that executor had an equal right to the custody of the funds and properties of the estate, I do not think, under the authorities, that the accounting executor is liable for that item. *In re* Demarest (Surr.), 9 N. Y. Supp. 292.    As to the credit in Schedule C, for the payment of $150 for interest upon the $100 note of the testator, held by George J. Snider, I do not consider that the same is allowable    The executors had moneys in their hands out of which the note should have been paid and discharged within a reasonable time after they entered upon their administration of the estate, and they could not legally fail so to do, and charge the estate with the ac-

cruing interest for the long period of time that has since elapsed. *In re* Babcock, id. 554. The item of $15, credited in the same schedule for legal services on this accounting, is not properly there. That is a matter for adjustment upon the allowance and taxation of costs in this proceeding. For the balance of the principal of the estate, the accounting executor is chargeable with such interest or income as may have been earned or accrued thereon, where invested, since April 19, 1891, the date of the death of the widow; and as to the remainder, which seems to have been appropriated to their own use by the executors, the accounting executor must be charged with legal interest from the same date. The increase or decrease which resulted on the sale or exchange of securities is chargeable to the principal estate. *In re* Lawrence (Surr.), 7 N. Y. Supp. 332. The credit of $500 in Schedule B, being one-half of the $1,000 which the executors used in their business, cannot be allowed. That was money of the estate which went into their partnership business, and, so far as this estate is concerned, both became liable for the full sum appropriated, as the money was so used with the assent of both.

The inventory is not before me, and it may be that the amounts and values herein stated are incorrect, and therefore, upon the settlement of the decree, the same may be therein corrected. I have simply indicated the rules in conformity to which the accounts must be adjusted and settled by the decree. The amount for which the accounting executor thus appears to be liable must be decreed to be applied by him, first, in payment of the costs and expenses of this accounting; then the burial expenses, if any, unpaid; next, in discharge of the debts of the testator; and the remainder to the legatees, agreeably to the provisions of the testator's will.