(8 App. Div. 341)

## In re VANDEVORT'S ESTATE.

## In re GARLOCK.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. EXECUTORS AND ADMINISTRATORS—LIABILITIES—LOANS ON PERSONAL SECURITY.
   An executor who loans money of an estate on personal security is liable for interest thereby lost to the estate.

2. BONDS—WHEN PAYABLE.
   A bond conditioned to pay money to the obligee's grandson on a certain day, or, in case of the death of the grandson before the time, to a certain other person, does not, on the death of the grandson before such time, require the sum to be paid forthwith.

3. WILLS—LEGACIES—PAYMENT OUT OF PROCEEDS OF REAL ESTATE.
   Testator devised to his grandchildren living in Michigan all his real and personal property in that state, and gave various sums to his children and grandchildren living elsewhere, stating that it was his intention to make their shares equal, he having theretofore made advances to them. The residue of his estate, both real and personal, he directed to be equally divided among his children and grandchildren. *Held*, that it was testator's intention that the legacies should be paid in full before any division of the residue should be made. *Bevan v. Cooper*, 72 N. Y. 317, distinguished.

Appeal from surrogate's court, Ontario county.

Judicial settlement of the accounts of Peter Garlock as one of the executors of the will of Thomas Vandevort, deceased. From the decree entered in the proceedings, Peter Garlock, as executor, and T. Spencer Vandevort, individually and as executor of the will of Cornelius Vandevort, deceased, and Clarence S. Vandevort and Gilbert M. Vandevort, individually and as executors of the estate of Thomas Vandevort, appeal. Affirmed.

November 20, 1894, Peter Garlock, executor, etc., appealed from a decree of the surrogate of the county of Ontario entered on the 30th day of July, 1894,

and from the whole thereof; having on the 2d of November filed exceptions to the findings of fact and conclusions of law made by the surrogate, and filed in his office on the 30th of July, 1894. T. Spencer Vandevort, individually and as executor, etc., on the 30th of July, 1894, filed exceptions to the rulings and findings made by the surrogate; and on January 2, 1895, he appealed "from so much and all that part of the decree of the surrogate's court of Ontario county, made and entered in the above-entitled proceeding on the 30th day of July, 1894, as, in substance and effect, adjudges and decrees that the sum of $1,000, secured to be paid in and by the mortgage of Cornelius Vandevort to said Thomas Vandevort, deceased, dated October 5, 1880, * * * to said Thomas W. Vandevort on April 15, 1897, or, in case of the decease of the said Thomas W. Vandevort before that date, to be paid to the executors, administrators, or assigns of said Thomas Vandevort, deceased, does not become due or payable to the executors of the said Thomas Vandevort, deceased, until the said 15th day of April, 1897." He also appealed from that part of the decree "as, in substance and effect, adjudges and decrees that the proceeds of the homestead farm, of 204 acres of land, mentioned in the sixth clause of the testator's will, in the hands of Peter Garlock, the accounting executor, are charged or chargeable with the payment of the several legacies given and bequeathed in the first, third, fourth, and fifth clauses of the testator's will, as the same are modified by the codicils thereto; this appellant claiming that said legacies, as so modified, are not, nor is either of them, charged upon, or payable out of, said homestead farm, or the proceeds of its sale, in the hands of the said executor, and that in this respect, also, the said decree is erroneous." He also states that "in all other respects and particulars this appellant will affirm the validity of the said decree on this appeal." Extensive findings of fact were made by the surrogate, and form the basis of the decree settling the accounts of the executor. It is suggested that Sarah E. Emery has died since the appeal was perfected, and her personal representatives have been substituted. Thomas Vandevort died December 26, 1880, leaving a last will and testament and three codicils. The will was dated August 4, 1875, and the codicils were dated, respectively, February 4, 1878, June 12, 1879, and June 16, 1879; and they were admitted to probate, and an inventory was filed, April 28, 1884. He left about $20,000 of personal property, and a homestead farm, containing 204 acres, lying near the village of Phelps, known as the "Horton or Vandevort Farm." Also another piece lying on the Pre-emption road, in the town of Phelps, containing about 14 acres of land, commonly called the "Blinn Place." There was a contest before the will was admitted, and temporary administrators were appointed. The testator left, him surviving, his widow, Ella Vandevort; his son Gilbert M. Vandevort; his son Cornelius Vandevort; his son T. Spencer Vandevort; Sarah E. Emery, a daughter; Maria Garlock, a daughter (wife of the executor); and Albert T. Vandevort and Ellen Vandevort, children of Andrew P. Vandevort, a deceased son of the testator. He also had several other grandchildren at the time of his death. Numerous litigations have ensued in respect to his estate, and many facts and details relating thereto appear in the following reports: Garlock v. Vandevoort, 5 N. Y. Supp. 737 (special term opinion, delivered by Adams, J.), affirmed 58 Hun, 601, 12 N. Y. Supp. 955, affirmed 128 N. Y. 374, 28 N. E. 599. In Re Vandevort, 62 Hun, 612, 17 N. Y. Supp. 316, it was held, among other things, that the surrogate's court had jurisdiction to construe the codicils and will, in order to determine the rights of the parties in the distribution of the estate. And in Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599, it was also held that the surrogate had authority to construe the provisions of the will, and determine their meaning and validity, when necessary to make his decree as to distribution. See, also, Garlock v. Vandevort (Sup.) 12 N. Y. Supp. 955.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

S. S. Partridge and E. K. Burnham, for appellant executor.

Thomas H. Bennett, for appellant T. Spencer Vandevort.

John S. Andrews, Wynkoop & Rice, and J. A. Robson, for respondents.

HARDIN, P. J. Peter Garlock, the executor, complains of the surcharge of $1,020 made by reason of his improper conduct in the sale of the farm of 204 acres in virtue of the power conferred in the will. Upon a careful perusal of the evidence which was taken in ·the surrogate's court, we are of the opinion that it sustains the conclusion that the sale was collusive, and that the evidence fully sustains the conclusion upon it reached by the surrogate. And we are of the opinion that as matter of law, upon the facts found by him, the executor was properly surcharged by the surrogate with $5 an acre, the difference between the price which the executor received for the farm, and the actual value of the farm as found on the evidence, conflicting to a large extent though it was, before the surrogate. Gardner v. Ogden, 22 N. Y. 327; Forbes v. Halsey, 26 N. Y. 65; Colburn v. Morton, 5 Abb. Prac. (N. S.) 315, 325. In the course of the opinion delivered in the case last cited, numerous cases · are referred to, and it was said by Davies, J., viz.:

"Where a purchase has been made in violation of these principles, the cestui que trust, or those who may have succeeded to his rights, can either apply to have the sale set aside, or may affirm the sale and charge the purchaser with the actual value of the lands purchased, as was done in the notable case of Buildings Co. v. Mackenzie, 8 Brown, Parl. Cas. 42."

2. We are of the opinion that the evidence before the surrogate's court warranted the surrogate in surcharging the 1 per cent. interest upon certain notes mentioned in the decree, which the executor had, in violation of his duty, taken. It is quite evident that he was willing to oblige members of his family more readily than he was to follow the strict rules of law in the administration of the assets of the estate. In re Scheideler's Estate, 75 Hun, 185, 27 N. Y. Supp. 7. When the executor undertook to loan the funds of the estate upon personal security, and disregard the law relating to trustees, which requires special classes of security to be taken, it is quite evident that he had as a motive the accommodation of members of his family. Under such circumstances, we think it was very proper that the surrogate should surcharge him the interest which by his misconduct was lost to the estate. King v. Talbot, 40 N. Y. 76; Adair v. Brimmer, 74 N. Y. 539; In re Myers, 131 N. Y. 409, 30 N. E. 135; In re Goetschius' Estate, 2 Misc. Rep. 284, 23 N. Y. Supp. 970. If he had paid the moneys upon the legacies, instead of loaning the same, he would have come nearer vigilant discharge of his duty as executor. Brown v. Rickets, 4 Johns. Ch. 304.

3. At the time of the death of the testator, he was the owner of a bond and mortgage made by Cornelius Vandevort to him, dated October 5, 1880, to secure the payment of the sum of $8,000, purchase money of premises described in the mortgage. The mortgage contained a clause declaring it to be a security for the payment of the sum of $8,000, purchase money, with interest thereon, according to the condition of a bond. In the bond were the conditions of payment, in the following language:

"The condition of this obligation is such that if the above-bounden Cornelius Vandevort, his heirs, executors, or administrators, shall and do well and truly pay or cause to be paid unto the above-named Thomas Vandevort, his certain

attorney, executors, administrators, or assigns, the sum of seven thousand dollars, in sixteen equal annual payments, with annual interest on all sums due and remaining unpaid,—no principal or interest to be paid, however, till April 1, 1882, when the first payment of principal shall become due, with interest on the whole sum from this date,—and shall pay to my grandson (his son) Thomas W. Vandevort on April 15, 1897, one thousand dollars, without interest, or if, in case of the decease of my grandson Thomas W. Vandevort before that date, he shall pay said thousand dollars to my executors, administrators, or assigns. * * *"

The testator died December 26, 1880. On the 28th of June, 1885, his grandson Thomas W. Vandevort died in infancy and intestate; he being the person to whom, by the condition of the bond, the $1,000 was payable on April 15, 1897, without interest. Cornelius Vandevort, the mortgagor, died September 18, 1885, and letters testamentary under his will were issued to T. Spencer Vandevort, December 10, 1885; and on November 5, 1887, T. Spencer, as executor of Cornelius, contracted to sell the mortgaged premises to Edwin K. Burnham, subject to the lien, however, of the mortgage, and Burnham immediately transferred his contract to purchase to Abram Garlock. On November 12, 1887, Abram Garlock made a payment on the mortgage. On the 18th day of March, 1889, Peter Garlock, as executor, executed a satisfaction piece, in which it was declared that the mortgage was redeemed and paid off, satisfied and discharged, "except the sum of one thousand dollars, which becomes due April 15th, 1897, and the said mortgage is valid to secure the same," which discharge was recorded in the clerk's office of Ontario county. The appellant T. Spencer Vandevort requested the surrogate to find, viz.:

"That upon the death of the said Thomas W. Vandevort the alternative clause in the bond of said Cornelius Vandevort, mentioned in the thirty-first finding of fact, operated to make said $1,000 due and payable immediately to the executors of said testator, mortgagee, Thomas Vandevort; and the account of said executor, Peter Garlock, should be surcharged with the sum of $1,000, together with interest thereon from the 28th of June, 1885, the date of the death of the said Thomas W. Vandevort."

The surrogate refused the request so made, and an exception was taken. The same appellant also requested the surrogate to find that it was the duty of the executor to collect such $1,000, and to receive and reduce the same to money, should opportunity be offered to him to do so, and that he should have collected said mortgage in the month of March, 1889, and that his account should be surcharged with the sum of $1,000, with interest from April 1, 1889. This request the surrogate also refused, and the appellant took an exception to such refusal.

We think the contention of the appellant, that by the death of Thomas W. Vandevort on the 28th day of June, 1885, the $1,000 mentioned in the mortgage became presently due, cannot be sustained. The specification of April 15, 1897, as the time for the payment of the $1,000, is clear and definite; and the provision in the bond is to the effect that it shall be payable at that date, and without interest. No other specific time is mentioned for the payment of the $1,000. After mentioning the date that the $1,000 should be paid, to wit, April 15, 1897, without interest, the bond con-

tains the following words: "Or if, in case of the decease of my grandson Thomas W. Vandevort before that date, he [the mortgagor] shall pay said thousand dollars to my executors, administrators, or assigns." The effect of the last-quoted language is to change the party who shall receive the payment, but it does not change the time when the payment shall be made by the mortgagor or obligor. Undoubtedly, it is the duty of the court to put itself, in giving construction to the instrument, as near as may be in the situation of the parties, and view the surrounding circumstances, and bear in mind the occasion and apparent object of the parties, and therefrom determine the meaning and intent of the language employed in framing their agreement. Dent v. Steamship Co., 49 N. Y. 390–395; Smith v. Kerr, 108 N. Y. 31–37, 15 N. E. 70; Kennedy v. Railroad Co., 67 Barb. 169. In this case the transaction was between father and son. The son's circumstances, to some extent, had become embarrassed, and evidently required the conciliatory and accommodating terms which the father consented to give to him in the adjustment of the indebtedness due from the son to the father, and a liberal extension of the terms of payment was agreed upon between them. In that same spirit of liberality, it is fair to suppose that the father consented to postpone the payment of $1,000, which he provided should be made to his grandson, to a period of time when he should arrive at the age of 21 years, to wit, on April 15, 1897. However, the father contemplated the possibility that the grandson might die, and caused a clause to be inserted, that, if he should die before the lapse of that time, then in that event the $1,000 should fall into the hands of the father's estate. Suppose Thomas W. had died a few days or a few months after the execution of the mortgage; would it be reasonable to suppose that it was the intention of the father that the $1,000 should immediately become due? On the contrary, we are of the opinion that he named a future date with a view of being lenient to Cornelius, his son, who assumed the large indebtedness by the execution of the mortgage, and that the father humored the son by postponing the payment of $1,000 until the arrival of the date mentioned, to wit, April 15, 1897. Evidently the father, by allowing to be inserted in the bond the words, "or if, in case of the decease of my grandson Thomas W. Vandevort before that date, he [mortgagor or obligor] shall pay said thousand dollars to my executors, administrators, or assigns," contemplated the lapse of time and the probable occurrence of his death before the 15th of April, 1897, and therefore caused the language to be used which would cover a contingency very likely to happen, to wit, the death of the father. And the change of the party to whom the $1,000 was to be paid was to take place in the event of the death of Thomas W. before that date, and the language may be read as though it had been written, "The mortgagor shall then pay to the executors, or their assigns, of the father, if Thomas does not survive until the date mentioned for the payment of the $1,000, without interest."

Nor do we think there is any controlling force in the contention of the appellant that the surrogate should have charged the accounts

40 NEW YORK SUPPLEMENT.

of the executor with interest upon the $1,000 from April 1, 1889, because of the omission of the executor to enforce the mortgage. The evidence relied upon to support such a contention is not satisfactory, and we are of the opinion that the surrogate properly omitted to charge the executor with dereliction of duty in having failed to collect the bond and mortgage before, by the terms thereof, they were due, as already intimated. We therefore find no occasion to disturb the conclusion reached by the surrogate in respect to the $1,000 secured by the mortgage of Cornelius Vandevort.

4. Testator, by the terms of his will, gave to his wife the household furniture and household effects, and provided that she should receive during the term of her natural life the interest at 7 per cent. on $5,000, to be paid by his executors. In the second clause of the will he devised to his grandchildren living in Michigan at the time of his death all his real and personal estate, of every name and nature, that he should own at the time of his death in the state of Michigan. By the third clause he gave to his grandchildren who should be living at the time of his death, except those living in Michigan, and except Albert Vandevort and Ellen Vandevort, the sum of $1,000 each, "to be paid to such of them as shall have become twenty-one years old within one year after my decease, and to be paid to those who are under twenty-one years old at my decease at the time that they, respectively, attain their majority." In the fourth clause he gave to his grandchildren Albert Vandevort and Ellen Vandevort the sum of $1,500, to be paid to them within one year after his decease, "if they shall have then attained the age of twenty-one years old. If they shall not have become twenty-one years old at the date of my decease, said sum shall bear interest at six per cent. per annum from that date until they, respectively, attain that age." In the fifth clause of the will he gave to his daughter Maria Garlock the sum of $3,000, and to his daughter Sarah E. Emery the sum of $1,200, and to his son Gilbert M. Vandevort the sum of $500, "to be paid them, respectively, within two years from my decease, which sum shall bear interest from and after one year from my decease." Following that provision is the following language:

"It is my desire and intention hereby to make the shares of my children, respectively, equal; and, having made advances of various sums of money to each of my sons and daughters, the above bequests are made to equalize the amount received by each from me."

The sixth and seventh clauses of his will contain the following language, viz.:

"I give, bequeath, and devise all the rest, residue, and remainder of my property, both real and personal, including the proceeds of my homestead farm of two hundred and four acres of land, which I desire my executors to sell, to be equally divided between my children and my grandchildren who shall be living at my decease, share and share alike. Seventh. I hereby nominate and appoint my son-in-law Peter Garlock * * * and my son Gilbert M. Vandevort * * * executors of this my last will and testament, with full power and authority to sell and convey any and all my real estate of which I shall die seised and possessed, to pay off the said legacies, and to make the proper division of my property as herein provided. * * *"

The will was executed the 4th day of August, 1875, and on the 4th of February, 1878, he made a codicil to the will, in which he declared that it was his intention that the legacies to his grandchildren provided in the third section of the will should be paid to them at the times therein mentioned, but with no interest on the amount of said legacies, or any of them.    He also canceled the legacy of $1,200 given to Sarah E. Emery; declaring that he had, since the making of the will, advanced that sum to her.    On the 12th of June, 1879, he made another codicil, revoking the legacy to Albert Vandevort, and giving and bequeathing to him, instead thereof, "the sum of three thousand dollars, to be paid him within one year after my decease, if he shall then have attained the age of twenty-one years, or, if he is not twenty-one years old at my decease, to be paid to him when he shall have reached that age, but without interest."

From the provisions of the will quoted, it is quite apparent that the testator contemplated that there must be a considerable lapse of time before the will could be fully executed; and the language used by the testator would seem to indicate a disposition to distribute his entire estate, both real and personal, among his children and grandchildren in such a manner as to be in accordance with the plan to distribute the whole of his estate, both real and personal, and that to carry out each and every part of the plan was essential to complete execution of his intentions in respect to the several members of his family.    To effectuate such purpose, he conferred power and authority upon his executors "to sell and convey any and all my [his] real estate of which I shall die seised and possessed, to pay off the said legacies, and to make the proper division of my property as herein provided."    Considerable significance should be given to the words, "to pay off the said legacies, and to make the proper division of my [his] property as herein provided."    Those words seem to be in harmony with the general intent of the testator that all of his legacies, and all of the provisions made for the several members of his immediate family, as well as his grandchildren, should be carried into effect.    Those words were used following the provision in the sixth clause of the will, authorizing his executors to sell the homestead farm, of 204 acres, and providing that the proceeds thereof "be equally divided between my [his] children and my [his] grandchildren who shall be living at my decease, share and share alike."    In Re James, 80 Hun, 371, 30 N. Y. Supp. 1, it was said that, where legatees named in a will are relatives of the testatrix, the court will presume the existence of a desire on the part of the testatrix that all parts of her estate shall be made liable for the payment of such legacies.    The language of the will seems to warrant the conclusion that it was the intention of the testator that the legacies should be paid in full, and that the residue and remainder of his estate should be divided in accordance with the language used in the sixth clause, wherein he says, after providing for the sale of a certain portion of his real estate, that the "rest, residue, and remainder of my property, both real and personal, including the proceeds of my homestead farm, of two hundred and four acres of land, which I desire my executors to sell, to be equally divided between my

children and my grandchildren who shall be living at my decease, share and share alike." In the course of the opinion delivered by Smith, P. J., in Scott v. Stebbins, 27 Hun, 338; affirmed 91 N. Y. 605, he said:

"It is hardly to be conceived that the testator contemplated that any part of the proceeds of the real estate should be distributed between his sons, as a surplus, until their legacies were paid in full. In other words, it is to be presumed that he intended that the real estate should be applied to the payment of their legacies, before there could be any remainder of the proceeds of the real estate to be divided between them."

In the course of the opinion delivered in the court of appeals in that case (page 614, 91 N. Y.), it was said:

"The presumption is, he meant the legacy to be paid; that he did not intend to go through the mere form of bequeathing a legacy to his own son, without leaving something to pay it with. He evidently intended the legacy should be paid, under all circumstances."

It appeared in that case that the testator, at the time the will was drawn, was the owner of considerable personal property, which he had inventoried in December previous to making the will at a large amount. And it is further said in the course of that opinion, viz.:

"So far as we have been able to ascertain, there is no case in this state adjudging real estate not chargeable with the payment of legacies solely on the ground of a previous devise."

We think this last expression is an answer to the suggestion made in the argument of the learned counsel for the appellant, that the fact that the testator had devised his real estate in Michigan was an indication that he did not, by the subsequent language used, intend to have the proceeds of the real estate known as the "Home Farm" used in payment of the legacies. The language of the testator seems to indicate that he intended that the real estate (the home farm) should be sold, and that the proceeds should be treated as a fund for distribution. Under such circumstances, the doctrine of equitable conversion would apply. Stagg v. Jackson, 1 N. Y. 206; Horton v. McCoy, 47 N. Y. 25; Taylor v. Dodd, 58 N. Y. 335; Kalbfleisch v. Kalbfleisch, 67 N. Y. 354; Le Fevre v. Toole, 84 N. Y. 95; Shipman v. Rollins, 98 N. Y. 324; McCorn v. McCorn, 100 N. Y. 513, 3 N. E. 480.

Appellant calls our attention to Bevan v. Cooper, 72 N. Y. 317, in which case the general rule was laid down that the personal estate is the primary fund for the payment of legacies, and that it is the only fund, unless express direction or clear intent is found in, and may be gathered from, the will, in connection with the surrounding circumstances. In the course of the opinion delivered in that case, it was said:

"It is of much moment, too, that the residuary clause provides for those who had a claim upon his forethought,—his widow and his children,—while the legacies sought to be charged are to strangers to his own blood, and having no claim upon him, unless it be that of faithful service, or the remote one of relationship to a first wife, and that of former domicile in his household. * * * Courts have often struggled to find reason in a will for charging upon the real

estate devised a legacy to a child, and it is in the same line not to be too ready to make the estate devised to them subject to a legacy to another not of the testator's kin."

We think that case is quite distinguishable from the one in hand. Nor do we think Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332, aids the contention of the appellant. In that case the will gave two money legacies, and then disposed of her residuary estate. At the time the will was made she owned no real estate, and a year afterwards she purchased certain real estate, and it was held that the legacies were not a charge upon the real estate. There were no words in the will directing a sale "to pay off the said legacies, and to make the proper division of my property as herein provided," which are found in the will before us.

Upon looking at Burns v. Allen, 89 Hun, 552, 35 N. Y. Supp. 342, it is found that there was no indication in the terms of the will of an intention to charge the legacies upon the real estate of the testatrix, and it was held that the extrinsic circumstances did not indicate an intention of the testatrix to charge the legacies upon the realty. We find nothing in the opinion inconsistent with the views stated here.

We reach the conclusion that the learned surrogate was right in determining "that the proceeds of the testator's realty, of which he directed a sale, as well as his personal estate, are applicable to the payment of the general legacies," and that "the money arising from the sale thereof became legal assets in the hands of the executor, when received by him, and for which, as such executor, he was bound to account as personal estate. The intent and direction of the testator to sell the land was absolute, or 'out and out' for all purposes" (Stagg v. Jackson, 1 N. Y. 212),—and that the surrogate had authority to construe the provisions of the will in determining their meaning and validity in order to make a decree of distribution (Purdy v. Hayt, 92 N. Y. 446; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599; Cahill v. Russell, 140 N. Y. 408, 35 N. E. 664; In re Bolton, 146 N. Y. 260, 40 N. E. 737; Baldwin v. Smith, 3 App. Div. 350, 38 N. Y. Supp. 299). The foregoing views lead to the conclusion that the decree of the surrogate's court should be affirmed.

Decree affirmed, with costs and disbursements allowed to respondent Emery against Peter Garlock personally, and with one bill of costs and disbursements in favor of respondents Clarence S. Vandevort and Gilbert M. Vandevort, payable out of the estate. All concur.